# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 1:17-cv-11816
)
RAYTHEON COMPANY, )
)
Defendant. )
)

## AFFIDAVIT OF MICHELLE K. BUCHANAN

I, Michelle K. Buchanan, upon my oath, declare as follows:

1. I am over the age of 21, of sound mind, and capable of making this affidavit. The statements contained herein are true and based on my personal knowledge.

2. I am a paralegal in the law firm of Shook, Hardy, & Bacon LLP, counsel of record for the defendant, Raytheon Company, in this litigation.

3. Attached hereto as Exhibits A-1 through A-8 are true and correct certified copies of public court records from federal court case *Town of Bedford v. Raytheon Co., et al.*, No. 89-2313-WD (D. Mass. Apr. 12, 1991). These certified copies were obtained from the Director of Archival Operations at The National Archives at Boston.

FURTHER AFFIANT SAYETH NAUGHT.

_Michelle K. Buchanan_
Michelle K. Buchanan

STATE OF MISSOURI    )
COUNTY OF JACKSON    ) ss:
                                )

Subscribed and sworn to before me, a Notary Public, this 20th day of December, 2017.

_Virginia Renée Cannon_
Notary Public

My Commission Expires:    9-2-2018

VIRGINIA RENEE CANNON
Notary Public - Notary Seal
State of Missouri
Commissioned for Clay County
My Commission Expires: September 02, 2018
Commission Number: 14435302

# EXHIBIT A-1

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me as the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *alfie m paul* | |
| NAME | DATE |
| Alfie M. Paul | NOV 0 9 2017 |
| TITLE | |
| Director of Archival Operations | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | |

NA FORM 14007 (10-86 )

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TOWN OF BEDFORD,<br><br>    Plaintiff,<br><br>    v.<br><br>RAYTHEON COMPANY,<br>MASSACHUSETTS PORT AUTHORITY,<br>U.S. DEPARTMENT OF THE AIR FORCE<br>    and<br>U.S. DEPARTMENT OF THE NAVY<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**89 - 2313 - WD**
Civil Action No. _____



## COMPLAINT AND DEMAND FOR JURY TRIAL

### STATEMENT OF THE CASE

1.  This is a civil action for recovery of past and future response costs, past and future damages to natural resources, and for injunctive relief regarding releases of hazardous substances impacting the primary drinking water source for the Town of Bedford, Massachusetts.  The action is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (hereinafter "CERCLA"), 42 U.S.C. § 9601 et seq., and Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972.

2.  Defendants are each owners or operators of a facility; or owned or operated a facility at the time of disposal of a hazardous substance at a facility; or arranged for disposal or

*S/, GFH/ (8TH/*
*Ridero/ 16 OCT 1989*

treatment of hazardous substances at a facility. The releases and threatened releases of hazardous substances from Defendants' facilities caused the Town of Bedford to incur necessary response costs, including at least $2,009,283.00 for alternative drinking water supply and $122,575.00 engineering costs, and the Town of Bedford will continue to incur necessary response costs as recognized in the federal National Contingency Plan under Section 105 of CERCLA, 42 U.S.C. § 9605. Moreover, the releases and threatened releases have caused damage to natural resources of the Town of Bedford. The Town of Bedford seeks compensatory, declaratory, and equitable relief, joint and several, against the Defendants.

3. Hazardous substances are migrating into and have migrated into the aquifer which the Town of Bedford has used as its primary source of drinking water. The continued subsurface presence of Defendants' wastes contaminates and threatens to further contaminate the Town of Bedford's groundwater.

<u>JURISDICTION AND VENUE</u>

4. This Court has jurisdiction over the subject matter of this action pursuant to:

a. 28 U.S.C. § 1331 (federal question) inasmuch as the matter in controversy arises under the Constitution and laws of the United States;

b. 42 U.S.C. §§ 9607(a), 9607(f), 9613(b) and 9620 as a result of the claims under CERCLA;

-2-

c. 42 U.S.C. §§ 6972(a) and 6961 as a result of the claims under RCRA; and

d. 28 U.S.C. §§ 1337, 1346 and 1357 as a result of the claims against the United States Government including the U.S. Department of Navy and the U.S. Department of Air Force.

5. Venue is proper in this district pursuant to 42 U.S.C. § 9613(b) and 42 U.S.C. §§ 6972(a) because the releases and threats of releases of hazardous substances and the waste disposal and materials handling practices described more fully herein occurred in Massachusetts. Venue in this district is also proper pursuant to 28 U.S.C. §§ 1391(b), (c) and (e).

## DEMAND FOR JURY TRIAL

6. The Town of Bedford demands trial by jury of the causes of action alleged in this complaint.

## DEFINED TERMS

7. In this Complaint, the term "hazardous substance" includes, without limitation, all materials so defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and the regulations promulgated at 40 C.F.R. Part 302.

8. In this Complaint, the term "facility" is used to mean (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance

has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel. 42 U.S.C. § 9601(9).

9.  In this Complaint, the term "release" is used to mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant), but excludes activities identified in 42 U.S.C. 9601(22), Subparagraphs (A) through (D). 42 U.S.C. § 9601(22).

## PARTIES

10.  The Plaintiff, Town of Bedford (hereinafter "Plaintiff" or "Town of Bedford") is a municipal corporation duly established under the laws of the Commonwealth of Massachusetts and is located entirely within the County of Middlesex, Commonwealth of Massachusetts.

11.  The Defendant Raytheon Company (hereinafter "Raytheon") is a Delaware corporation with its principal place of business in Lexington, Massachusetts. Raytheon owned, operated, or otherwise arranged for the disposal of hazardous substances at facilities which are subject to this Complaint.

12.  The Defendant Massachusetts Port Authority (hereinafter "Massport") is a body politic and corporate created pursuant to G.L. c. 91 App., with its principal place of business in Boston, Massachusetts. Massport owned, operated, or otherwise arranged

-4-

for the disposal of hazardous substances at a facility which is subject to this Complaint.

13. The Defendant U.S. Department of the Navy owned, operated, or otherwise arranged for the disposal of hazardous substances at a facility which is subject to this Complaint.

14. The Defendant U.S. Department of the Air Force owned, operated, or otherwise arranged for the disposal of hazardous substances at a facility which is subject to this Complaint.

15. Each Defendant is separately a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

16. Defendants Raytheon and Massport are each a "person" as defined in Section 1004(15) of RCRA, 42 U.S.C. 6903(15).

17. Defendants U.S. Department of the Air Force and U.S. Department of the Navy are each a "person" as defined and provided for in Section 7002(a)(1) of RCRA, 42 U.S.C. § 6972(a)(1).

18. In this Complaint the term "United States" is used when collectively referring to the Defendants U.S. Department of the Navy and U.S. Department of the Air Force.

## FACTUAL BACKGROUND

A. **Bedford Uses The Hartwell Aquifer For Potable Water Supply**

19. At all times material hereto, the Town of Bedford owned, and presently owns, certain wells and a certain drinking water treatment plant, each located entirely within the Town of Bedford and respectively known as wells numbered 10, 11 and 12

(hereinafter "the wells") and the Hartwell Road Water Treatment Plant (hereinafter "the Bedford drinking water plant").

20. Since the date of the initial commencement of operation of the wells in, or about, March 1983 and until December 9, 1983 (as to well no. 11), January 25, 1984 (as to well no. 10) and April 3, 1984 (as to well no. 12), the Town of Bedford has operated the wells to withdraw water from an aquifer (hereinafter the "Hartwell aquifer") which was, *inter alia*, managed and otherwise controlled by the Town of Bedford as the primary source of potable water supply for its inhabitants.

21. During the aforesaid periods, the Town of Bedford continuously and regularly operated the wells and the Bedford drinking water plant to convey the primary sources of potable water supply to its residential citizens, businesses and visitors.

22. During the aforesaid periods, during which the wells and the Bedford drinking water plant were in operation and prior to the closure of the wells, the Hartwell aquifer provided the residential citizens, businesses and visitors of the Town of Bedford with a reliable, sufficient and continuous source of high quality potable water.

B. **Contamination Of Hartwell Aquifer**

23. The Hartwell aquifer has been contaminated and is currently contaminated by pollutants and substances including, among others, trichloroethylene, 1,1-Dichloroethylene, benzene, iron and manganese.

24. The list of CERCLA hazardous substances set forth in federal regulations at 40 C.F.R. Part 302 includes, among others, trichloroethylene, 1,1-Dichloroethylene and benzene.

25. Monitoring of the Hartwell aquifer in, or about, February 1984 identified levels of trichloroethylene up to 26 parts per billion ("ppb"), benzene up to 35 ppb and 1,1-Dichloroethylene up to 6 ppb.

26. The Contamination of the Hartwell aquifer exceeds maximum contaminant levels established under federal and state laws.

C.    Federal Drinking Water Standards

27. Federal regulations at 40 C.F.R. Part 141 establish maximum contaminant level goals ("MCLGs") for various pollutants. MCLG means the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, and which allows an adequate margin of safety.

28. Federal regulations at 40 C.F.R. Part 141 establish maximum contaminant levels ("MCLs") for various pollutants. MCL means the maximum permissible level of a contaminant in water which is delivered to the free flowing outlet of the ultimate user of a public water system.

29. Trichloroethylene is a potent central nervous system depressant and poses a risk of cancer.

30. Federal regulations establish a MCLG of zero for trichloroethylene.

-7-

31. Federal regulations establish a MCL of 0.005 mg/l for trichloroethylene.

32. 1,1-Dichloroethylene poses a risk of cancer and mutagenesis.

33. Federal regulations establish a MCLG of zero for 1,1-Dichloroethylene.

34. Federal regulations establish a MCL of 0.007 mg/l for 1,1-Dichloroethylene.

35. Benzene is a leukemic agent in human beings and is bioaccumulative.

36. Federal regulations establish a MCLG of zero for benzene.

37. Federal regulations establish a MCL of 0.005 mg/l for benzene.

38. Federal regulations at 40 C.F.R. Part 143 establish secondary maximum contaminant levels (hereinafter "SMCLs") for public water systems. SMCL means the maximum permissible level of certain other contaminants in water which is delivered to the free flowing outlet of the ultimate user of public water system.

39. Federal regulations establish a SMCL of 0.3 mg/l for iron.

40. Federal regulations establish a SMCL of 0.05 mg/l for manganese.

**D. Releases Of Hazardous Substances
From The Raytheon Systems Laboratory**

**a. Raytheon Owned And Operated Facility**

41. Raytheon is (a) an owner or operator of a facility and/or (b) a person who at the time of disposal of hazardous substances owned or operated a facility at which hazardous substances were disposed, and/or (c) a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at a facility.

42. Said facility (hereinafter "Raytheon Systems Laboratory") referred to in paragraph 41, above, is a 54.24-acre site traversed by Elm Brook on the South side of Hartwell Road in Bedford, Massachusetts and approximately 1000 feet south of the wells.

43. At all times relevant to this proceeding, the Raytheon Systems Laboratory facility was owned and operated by Raytheon.

**b. Release Of Hazardous Substances
From Raytheon Facility**

44. Upon information and belief, Raytheon has used, or otherwise handled, managed or disposed of hazardous substances and other pollutants at the Raytheon Systems Laboratory facility including: trichloroethylene, benzene, 1,1-Dichloroethylene, toluene, 1,1,2,2-tetrachloroethylene, trans-1,2-Dichloroethene, hydrochloric acid, sulfuric acid and arsenic.

45. Upon information and belief, there have been releases of hazardous substances and other pollutants, including

-9-

trichloroethylene, benzene, 1,1-Dichloroethylene, toluene,
1,1,2,2-tetrachloroethylene, trans-1,2-Dichloroethene,
hydrochloric acid, sulfuric acid, arsenic, iron and manganese
from the Raytheon Systems Laboratory facility.

46. Trichloroethylene was identified in the groundwater
at the Raytheon Systems Laboratory facility in concentrations
up to 1200 ppb.

47. A health advisory issued by the United States
Environmental Protection Agency (hereinafter "EPA") dated March
31, 1987 estimates that water with trichloroethylene
concentrations of 280 ppb may increase the risk of one excess
cancer per 10,000 people exposed.

48. The level of trichloroethylene in the groundwater at
the Raytheon Systems Laboratory facility significantly exceeds
the level of trichloroethylene concentrations estimated by EPA
to increase the risk of one excess cancer per 10,000 people
exposed.

49. Benzene was identified in the groundwater at the
Raytheon Systems Laboratory facility in concentrations up to
170 ppb.

50. A health advisory issued by the EPA dated March 31,
1987 estimates that drinking water with benzene concentrations
of 70 ppb may increase the risk of one excess cancer per 10,000
people exposed.

51. The level of benzene found in the groundwater at the
Raytheon Systems Laboratory facility significantly exceeds the

-10-

level of benzene concentrations estimated by EPA to increase the risk of one excess cancer per 10,000 people exposed.

52. Trans-1,2-Dichloroethene was identified in the groundwater at the Raytheon Systems Laboratory facility in concentrations up to 270 ppb.

53. Iron was identified in the groundwater at the Raytheon Systems Laboratory facility in concentrations up to 80 mg/l.

54. Manganese was identified in the groundwater at the Raytheon Systems Laboratory facility in concentrations up to 4.98 mg/l.

55. The levels of iron and manganese found in the groundwater at the Raytheon Systems Laboratory facility exceed the federal SMCL levels.

56. The groundwater beneath and adjoining the Raytheon Systems Laboratory facility is hydrologically connected to the Hartwell aquifer which the Town of Bedford has used for drinking water. Groundwater flows from the Raytheon Systems Laboratory facility in a northerly direction towards the Bedford drinking water plant and the wells.

57. On or about August 14, 1987, the Massachusetts Department of Environmental Quality Engineering issued Raytheon a Notice of Responsibility (hereinafter "NOR") letter which addressed, among other things, trichloroethylene use at the Raytheon Systems Laboratory facility.

58. A hydrological study undertaken by the engineering firm of Goldberg-Zoino & Associates, Inc. (hereinafter "GZA"),

dated December 1988, in response to the NOR identified a dry well at the Raytheon Systems Laboratory facility.

59. Upon information and belief, the dry well identified by the December 1988 GZA study had been used at the Raytheon Systems Laboratory facility as an overflow structure for an acid neutralization system.

60. The December 1988 GZA hydrological study also identified halogenated volatile organic compounds in groundwater within a zone extending from a dry well to Hartwell Road and Elm Brook.

61. Groundwater monitoring undertaken by Raytheon, its agents, or its contractors, or otherwise authorized by Raytheon, identified levels of halogenated volatile organic compounds at levels of 2 mg/l to 5.8 mg/l in overburden and shallow bedrock wells adjacent to the dry well.

62. Groundwater monitoring undertaken by Raytheon, its agents, or its contractors; or otherwise authorized by Raytheon; identified levels of halogenated volatile organic compounds up to 0.3 mg/l at monitoring wells downgradient of the Raytheon dry well. Such monitoring wells are less than 1000 feet from the Bedford drinking water plant.

63. Halogenated volatile organic compounds discharged at the dry well migrate north with ground water flow in the direction of the Bedford drinking water supply.

## E. Release Of Hazardous Substances From The Naval Weapons Industrial Reserve Plant Facility

### a. U.S. Department Of Navy And Raytheon Own And Operate A Facility

64. Defendants U.S. Department of Navy and Raytheon are each (a) an owner or operator of a facility and/or (b) a person who at the time of disposal of hazardous substance(s) owned or operated a facility at which hazardous substances were disposed, and/or (c) a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at a facility.

65. Said facility (hereinafter "Naval Weapons Industrial Reserve Plant" or "NWIRP") referred to in paragraph 64, above, is a 46-acre site, south of Hartwell Road and east of the Raytheon Systems Laboratory facility, which includes a Components Laboratory on top of Hartwell Hill and Flight Test Facility.

66. Presently, and at all other times relevant to this proceeding, NWIRP has been owned by the U.S. Department of Navy and operated by Raytheon.

### b. Release Of Hazardous Substances From NWIRP Facility

67. From 1954 to the present, Defendants U.S. Department of Navy and Raytheon have used, or otherwise handled, managed or disposed of hazardous substances and other pollutants at the

NWIRP facility including heavy metals (e.g., silver, lead, chromium and zinc), petroleum oils and lubricants, acids (e.g., acetic acid, sulfuric acid, nitric acid, hydrochloric acid, hydrofluoric acid, phosphoric acid, chromic acid and fluoroboric acid) and volatile organic compounds (e.g., 1,1,1-trichloromethane, trichloroethylene, toluene and xylene).

68. Upon information and belief, there have been releases of hazardous substances and other pollutants from the NWIRP facility.

69. By CNO letter ser 451/4U383534 dated March 26, 1984, the Chief of Naval Operations (hereinafter "CNO") approved an Initial Assessment Study for the purpose of identifying disposal sites and contaminated areas caused by hazardous substance storage, handling or disposal practices and resultant releases at the NWIRP facility.

70. In accordance with CNO letter ser 451/4U383534 dated March 26, 1984, the Naval Environmental Protection Support Service conducted an Initial Assessment Study and concluded that at least two (2) sites exist at the NWIRP that contain on-site disposal of hazardous substances and identified not less than six other potential sources of contamination.

71. The groundwater beneath and adjoining the NWIRP facility is hydrologically connected to the Hartwell aquifer, which the Town of Bedford has used for drinking water.

Groundwater flows from the NWIRP facility in a northerly direction towards the Bedford drinking water plant and the wells.

**F. Release Of Hazardous Substances**
**From The Hanscom Field Facility**

     **a. U.S. Department Of Air Force And**
     **Massport Own And Operate A Facility**

72. Defendants U.S. Department of Air Force and Massport are each (a) an owner or operator of a facility and/or (b) a person who at the time of disposal of hazardous substances owned or operated a facility at which hazardous substances were disposed, and/or (c) a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at a facility.

73. Said facility (hereinafter "Hanscom Field") identified in paragraph 72, above, is a 1,300 acre-parcel south of the Raytheon Systems Laboratory and NWIRP facilities.

74. At all times relevant to this proceeding, the Hanscom Field facility was (a) owned and operated by the U.S. Department of Air Force and (b) subsequently owned by the U.S. Department of Air Force and primarily operated by Defendant Massport. The Hanscom Field facility is currently owned by the U.S. Department of Air Force and primarily operated by Defendant Massport.

     **b. Raytheon Arranged For Disposal**
     **Of Hazardous Substances**

75. Upon information and belief, from 1962 through 1972, Raytheon arranged for the disposal or treatment, or arranged

with a transporter for transport for disposal or treatment, of hazardous substances at the Hanscom Field facility.

### c. Release Of Hazardous Substances From Hanscom Field Facility

76. At all times relevant to this proceeding, numerous hazardous substances were generated and disposed at the Hanscom Field facility, including those identified in <u>Installation Restoration Program Phase IV-A, Hanscom AFB Area 1, Appendix F, Architect/Engineer, Remedial Investigation Interpretive Report</u> dated February, 1987, prepared by the engineering firm of Haley & Aldrich, Inc.

77. Defendants U.S. Department of the Air Force and Massport have used, or otherwise handled, managed or disposed of hazardous substances at the Hanscom Field facility including, among others, the following wastes at five sites at the Hanscom Field facility identified below as Sites 1 through 5:

    (a)   Site 1:  Drummed waste oils, solvents, paint thinners and degreasers.  Volatile organic compounds with an aggregate concentration up to 1,762 parts per million ("ppm") have been identified in groundwater samples.

    (b)   Site 2:  Waste solvents (including waste liquids from Raytheon's metal plating facility from the early 1960s until 1972).  Volatile organic compounds with an aggregate concentration up to

-16-

272 ppm (including trichloroethylene
in concentrations up to 192 ppm) have
been identified in groundwater samples.

(c) Site 3: Waste oils, paint wastes, and
high concentrations of volatile organic
compounds (including trichloroethylene
in concentrations up to 291 ppb and
1,2-Dichloroethylene in concentrations
up to 30.2 ppb).

(d) Site 4: Battery acid, bonding
compounds, fuels, medical wastes, inks
and paints, mercury, photographic
chemicals, solvents, spent acids and
trichloroethylene.

(e) Site 5: Flammable materials.

78. Upon information and belief, there have been releases
of hazardous substances and other pollutants from the Hanscom
Field facility including releases of hazardous substances and
other pollutants identified in the preceding paragraph.

79. Upon information and belief, the groundwater beneath
and adjoining the Hanscom Field facility is hydrologically
connected to the Hartwell aquifer, which the Town of Bedford
has used for drinking water. Groundwater flows from the Hanscom
Field facility in a northerly direction towards the Bedford
drinking water plant and the wells.

G. **Response Costs Incurred And To Be Incurred By Town of Bedford**

80. Due to the contamination of the Town of Bedford's water supply, i.e., the Hartwell aquifer, the Massachusetts Department of Environmental Protection (formerly the Massachusetts Department of Environmental Quality Engineering) declared the Town of Bedford to be in a state of emergency pursuant to Massachusetts General Laws Chapter 41A and issued an order allowing the purchase of water from the Massachusetts Water Resources Authority ("MWRA").

81. The Town of Bedford has been compelled to discontinue use of the wells and the Bedford drinking water plant for the supply of potable water to its citizens, businesses and visitors due to the hazardous substance contamination and threat of contamination of the water pumped from the wells.

82. The contamination and threat of contamination of the Hartwell aquifer interferes with the Town of Bedford's right to use groundwater as a source of drinking water.

83. Since the respective dates of cessation of operation of each of the wells, and in order to provide its citizens, businesses and visitors with potable water, the Town of Bedford has incurred response costs entailing, _inter alia_, the purchase of water of uncertain quantity from other sources and at great expense, due to the aforesaid contamination.

84. The Town of Bedford will be required to expend substantial resources in order to regain use of the wells and

-18-

the water treatment plant as a source of potable water supply for its citizens, businesses and visitors.

85. The Town of Bedford has already incurred substantial costs, including costs associated with providing alternative water supplies, investigating and assessing the nature and extent of contamination in and around the wells, assessing the continued threat of groundwater contamination from Defendants' facilities and in evaluating options for remedial actions.

86. To date, the Town of Bedford has incurred costs of response, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), including at least $2,009,283.00 for alternative water supply; $122,575.00 engineering services; and significant other costs for response actions and evaluation of remedial actions. Additional expenditures for investigation and other response actions will be incurred.

87. The presence of hazardous substances in the Hartwell aquifer and in the groundwater underlying Defendants' facilities has caused, is causing, and threatens to continue causing injury to, destruction of and loss of natural resources, including groundwater and drinking water supplies, and further threatens harm to public health, safety and welfare.

## STATUTORY THRESHOLDS OBSERVED

88. The Town of Bedford, upon filing this action, will provide copies of this complaint to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency, as required by Section 113(l) of CERCLA,

-19-

42 U.S.C. § 9613(1), and Section 7002(b)(2)(F) of RCRA, 42 U.S.C. § 6972(b)(2)(F).

89. The Town of Bedford has provided notice of the imminent and substantial endangerment to, among others, EPA, the Commonwealth of Massachusetts, and to each of the Defendants as required by Section 7002(b) of RCRA, 42 U.S.C. § 6972(b).

90. The Town of Bedford has satisfied all conditions precedent to recovery under applicable law, including Section 107 of CERCLA, 42 U.S.C. § 9607.

## FIRST COUNT

**(Demand For Response Costs Under Section 107(a) of CERCLA Against Defendants Raytheon, Massport and United States)**

91. Plaintiff incorporates the allegations of paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in part:

> (a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section -
> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
> (4) any person who accepts or accepted any hazardous substances for transport to

disposal or treatment facilities,
incineration vessels or sites selected by
such person, from which there is a release,
or a threatened release which causes the
incurrence of response costs, of a hazardous
substance, shall be liable for -
    (A) all costs of removal or remedial
action incurred by the United States
Government or a State or an Indian tribe
not inconsistent with the national
contingency plan;
    (B) any other necessary costs of
response incurred by any other person
consistent with the national contingency
plan;

93. The Defendants herein are each (a) owners, operators,

or both of a facility; and/or (b) persons who at times of the

disposal of hazardous substances either owned or operated, or

both, a facility at which hazardous substances were disposed

of within the meaning of Section 107(a) of CERCLA, 42 U.S.C.

§ 9607(a); or (c) persons who by contract, agreement or otherwise

arranged for disposal or treatment, or arranged with a

transporter for transport for disposal or treatment, of hazardous

substances owned or possessed by Defendants or any other party

or entity at a facility containing hazardous substances.

94. As an owner or operator of a facility or facilities,

each Defendant handled and disposed or otherwise arranged for

the disposal of "hazardous substances" within the meaning of

Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), in such a

manner as to cause releases and threatened releases of hazardous

substances. These practices resulted, and continue to result,

in contamination and threatened contamination of the soils,

surface waters, and groundwaters at the Bedford drinking water
plant and the Hartwell aquifer.

95. As a direct consequence of the releases, threatened
releases, and discharges of hazardous substances, the Town of
Bedford has incurred costs responding to releases and threatened
releases from Defendants' facilities. The Town of Bedford
incurred and will incur costs of "response" as the term is
defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25),
including costs for "removal" and "remedial actions" as those
terms are defined in sections 101(23) and (24) of CERCLA, 42
U.S.C. § 9601(23) and (24).

96. The Town of Bedford's response costs were incurred in
a manner "not inconsistent with the national contingency plan"
as provided by Section 107(a)(4)(A) of CERCLA, 42 U.S.C.
§ 9607(a)(4)(A).

97. The Town of Bedford is a "State" for purposes of
response costs under Section 107(a)(4)(A) of CERCLA, 42 U.S.C.
§ 9607(a)(4)(A).

98. In the alternative, the Town of Bedford's response
costs were "necessary costs of response" and were incurred in a
manner "consistent with the national contingency plan" as
provided by Section 107(a)(4)(B) of CERCLA, 42 U.S.C.
§ 9607(a)(4)(B).

99. The Town of Bedford has incurred response costs which
include, but are not limited to, costs pertaining to

providing alternative water supplies pending clean-up of the contaminated aquifer or other remedial measures; investigation and assessment of the nature, extent and source of contamination of the wells; assessment of the continued threat of groundwater contamination from Defendants' facilities; evaluation of options for remedial actions; monitoring activities; field study activities; preparation of a remedial investigation plan; costs of legal representation; and costs of identifying potentially responsible parties.

100. Each Defendant is strictly and jointly and severally liable under Section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A), for response costs incurred and to be incurred by the Town of Bedford, including all direct, indirect, consequential and future costs of responding to the releases and threatened releases of hazardous substances into the Hartwell aquifer.

101. In the alternative, each Defendant is strictly and jointly and severally liable under Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), for response costs incurred and to be incurred by the Town of Bedford, including all direct, indirect, consequential and future costs of responding to the releases and threatened releases of hazardous substances into the Hartwell aquifer.

## SECOND COUNT

**(Demand For Damages to Natural Resources Against
Defendants Raytheon, Massport and United States)**

102. Plaintiff incorporates the allegations of paragraphs
1 through 101 of the Complaint as if fully set forth herein.

103. Section 107(a)(4)(C) of CERCLA, 42 U.S.C.
§ 9607(a)(4)(C), provides liability for:

> (C) damages for injury to, destruction of,
> or loss of natural resources, including the
> reasonable costs of a assessing such injury,
> destruction, or loss . . . .

104. "Natural resources" are defined in Section 101(16) of
CERCLA, 42 U.S.C. § 9601(16), to mean:

> land, fish, wildlife, biota, air, water,
> ground water, drinking water supplies, and
> other such resources belonging to, managed
> by, held in trust by, appertaining to, or
> otherwise controlled by the United States
> . . . any State or local government . . . .

105. The Town of Bedford is a "State" for purposes of
response costs under Section 107(a)(4)(C) and 107(f) of CERCLA,
42 U.S.C. §§ 9607(a)(4)(C) and 9607(f).

106. Hazardous substances released, presently being released
and threatened to be further released by the Defendants have
damaged the groundwater and drinking water supplies managed or
otherwise controlled by the Town of Bedford, including the
Hartwell aquifer.

107. Damage to natural resources, including the Hartwell
aquifer, continues to occur due to the release of hazardous
substances by Defendants.

108. The continuing contamination of the Hartwell aquifer is due to Defendants' failure to adequately control the source of hazardous substance contamination.

109. The Town of Bedford has incurred and will continue to incur reasonable costs to assess injuries, destruction and losses to its natural resources resulting from Defendants' releases and threatened releases of hazardous substance.

110. Each Defendant is strictly liable, under Sections 107(a) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9607(f), for damages for the injury to, destruction of and loss of use of the Town of Bedford's natural resources, including the reasonable costs of assessing such injury, destruction and loss.

111. Each Defendant is jointly and severally liable, under Sections 107(a) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9607(f), for damages for the injury to, destruction of and loss of use of the Town of Bedford's natural resources, including the reasonable costs of assessing such injury, destruction and loss.

### THIRD COUNT

**(Action Based Upon Imminent and Substantial Endangerment Under RCRA Section 7002 Against Defendants Raytheon, Massport and United States)**

112. Plaintiff incorporates the allegations of paragraphs 1 through 111 of the Complaint as if fully set forth herein.

113. Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6972(a)(1)(B), authorizes

the commencement of a citizen suit and provides in pertinent part:

> [A]ny persons may commence a civil action on his own behalf . . .
>
> (B) against any person, including the United States, and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

114. The Town of Bedford is a "person" as defined in Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

115. Each Defendant is a past or present generator and/or past or present owner or operator of a treatment storage or disposal facility who has contributed or is contributing to the past or present handling, storage, treatment or disposal of a solid or hazardous waste as defined in 42 U.S.C. §§ 6903(27) and 6903(5), respectively.

116. Federal hazardous waste regulations at 40 C.F.R. Part 261 identify, _inter alia_, spent halogenated solvents, including trichloroethylene, and spent non-halogenated solvents, including benzene, as RCRA hazardous wastes.

117. Federal hazardous waste regulations at 40 C.F.R. Part 261 identify, _inter alia_, commercial chemical products, manufacturing chemical intermediates, off-specification

commercial chemical products, and spill residues as hazardous
wastes, including benzene, trichloroethylene and
1,1-Dichloroethylene.

118. Massachusetts hazardous waste rules at 310 C.M.R.
§§ 30.100 et seq. identify, inter alia, spent solvents as
hazardous wastes, including spent solvents identified by EPA as
hazardous waste.

119. Massachusetts hazardous waste rules at 310 C.M.R.
§§ 30.100 et seq. identify, inter alia, commercial chemical
products, manufacturing chemical intermediates, off-specification
commercial chemical products and spill residues as hazardous
wastes, including wastes identified by EPA as hazardous wastes.

120. Pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, EPA
approved the hazardous waste program of the Commonwealth of
Massachusetts on or about February 7, 1985.

121. Upon information and belief, the hazardous waste
activities of each Defendant:

   (a) Were in violation, and continue to be in

     violation of applicable requirements promulgated

     under Subtitle C of the Resource Conservation

     and Recovery Act, 42 U.S.C. §§ 6921 et seq.,

     including requirements applicable to generators

     of hazardous waste, 40 C.F.R. Part 262,

     requirements to obtain a RCRA permit, 40 C.F.R.

     § 270.10, and minimum national standards setting

forth acceptable hazardous waste management practices, <u>see</u>, <u>e.g.</u>, 40 C.F.R. Part 264.

(b) Were in violation, and continue to be in violation of RCRA, as implemented under the Massachusetts Hazardous Waste Management Act, Mass. Gen. L. ch. 21C, §§ 1 <u>et</u> <u>seq.</u>, including requirements applicable to generators of hazardous waste, requirements to obtain a RCRA permit and minimum standards setting forth acceptable hazardous waste management practices, <u>see</u> 310 C.M.R. §§ 30.001 <u>et</u> <u>seq</u>.

(c) Are continuing and solid waste, hazardous waste and constituents thereof, continue to leak into groundwaters at and surrounding the Raytheon, NWIRP and Hanscom facilities.

122. The past or present handling, storage, treatment or disposal of a solid or hazardous waste by each Defendant continues to present an imminent and substantial endangerment to the environment, including the Hartwell aquifer, and the health of the residential citizens, persons doing business in and visitors to the Town of Bedford.

<u>FOURTH COUNT</u>

**(Request For Declaratory Judgment Against
Defendants Raytheon, Massport and United States)**

123. Plaintiff incorporates the allegations of paragraphs 1 through 122 of the Complaint as if fully set forth herein.

124. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part:

> In any such action described in this
> subsection, the court shall enter a
> declaratory judgment on liability for
> response costs or damages that will be
> binding on any subsequent action or actions
> to recover further response costs or damages.

125. An actual, substantial and justiciable legal controversy now exists between the Town of Bedford and the Defendants, and the Town of Bedford seeks a judicial declaration of its rights and legal relations with respect to the Defendants pursuant to 28 U.S.C. § 2201.

126. The Town of Bedford seeks this relief in addition to declaratory relief for the claims stated in the First through Third Counts of this Complaint, where such relief is available, including, but not limited to, a declaratory judgment entered under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring the Defendants' liability for response costs or damages under Section 107 of CERCLA, 42 U.S.C. § 9607. As a result of the contamination of the Town of Bedford's drinking water supply, the Town of Bedford has incurred and will continue to incur substantial response costs, expenses, damages, losses, obligations, and other liabilities.

127. A declaratory judgment under 28 U.S.C. § 2201 is appropriate in this action for the following reasons:

a.   It is required by Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

b.   It will obviate the need for multiple lawsuits, or minimize the issues involved in a subsequent lawsuit, each time the Town of Bedford incurs additional response costs, expenses, damages, losses, obligations for which reimbursement is required from the Defendants under applicable law;

c.   It will provide the Town of Bedford with assurance that it will be reimbursed for its response costs, expenses, damages, losses, and other obligations;

d.   It will provide the Defendants the incentive to participate in the investigation and cleanup measures to provide safe drinking water for the Town of Bedford;

e.   It will delineate the Defendants' obligations, relieving them from uncertainty and better enabling the parties to make proper and prompt response to the environmental problems resulting from the identified releases; and

f.   The public interest in prompt and effective remedial measures to address the contaminated groundwater will be served.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against each Defendant, jointly and severally, as follows:

1.   Judgment on the First Count for the sum of all response costs (plus interest) incurred by the Town of Bedford to the time of entry of judgment relating to the release and threatened release of hazardous substances from the Defendants' facilities;

2. Declaratory and necessary injunctive relief on the First, Second and Fourth Counts directing reimbursement to the Town of Bedford for any and all future response costs plus interest incurred by Town of Bedford relating to the release and threatened release of hazardous substances from the Defendants' facilities;

3. Judgment on the Second and Fourth Counts for all damages (plus interest) sustained and to be sustained to the natural resources of the Town of Bedford including damages for all response costs and expenses incurred or to be incurred by the Town of Bedford for removal, remediation or other responses to the contamination of the Hartwell aquifer and damages in amount necessary to compensate the Town of Bedford for the damage to the natural resources and the lack of use of such natural resources;

4. Injunctive relief on the Third Count directing a remedial investigation to be funded and undertaken to determine the full nature and extent of the contamination of the Hartwell aquifer;

5. Injunctive relief on the Third Count directing safe drinking water in the quantity of 820,000 GPD be provided to the Town of Bedford and other necessary actions undertaken to replace the contaminated drinking water until the Hartwell aquifer is restored or another permanent remedy is established;

6.  Injunctive relief on the Third Count directing abatement of the pollution to the Town of Bedford's property and natural resources; and

7.  Awarding the Town of Bedford its costs of suit herein, including attorney fees, and any other relief as this Court deems just and proper.

TOWN OF BEDFORD

By its attorneys,


_____

Robert M. Hacking
Calum B. Anderson
PARKER, COULTER, DALEY & WHITE
One Beacon Street
Boston, Massachusetts   02108
(617) 723-4500


_____

Special Counsel
Charles B. Molineaux
Christopher L. Rissetto
Gary B. Cohen
ZORC, RISSETTO, WEAVER & ROSEN
2300 N Street, N.W.
Washington, D.C.   20037
(202) 663-9100

# EXHIBIT A-2

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *alfie m paul* | |
| NAME<br>Alfie M. Paul | DATE<br>NOV 09 2017 |
| TITLE<br>Director of Archival Operations | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF BEDFORD, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
| | ) No. 89-2313-WD |
| RAYTHEON COMPANY, | ) |
| MASSACHUSETTS PORT AUTHORITY, | ) |
| U.S. DEPARTMENT OF THE AIR FORCE | ) |
| and | ) |
| U.S. DEPARTMENT OF THE NAVY, | ) |
| Defendants. | ) |
| RAYTHEON COMPANY, | ) |
| Defendant/Third Party Plaintiff, | ) |
| v. | ) |
| NEW ENGLAND NURSERIES & GARDEN CENTERS, INC., ET AL., | ) |
| Third-party Defendants. | ) |

### CROSS-CLAIMS OF U.S. DEPARTMENT OF THE AIR FORCE AND U.S. DEPARTMENT OF THE NAVY AGAINST DEFENDANTS MASSACHUSETTS PORT AUTHORITY AND RAYTHEON COMPANY

Defendants United States Department of the Air Force ("Air Force") and United States Department of the Navy ("Navy") hereby cross-claim against the defendants Raytheon Company ("Raytheon") and Massachusetts Port Authority ("Massport") as follows:

1. These cross-claims arise out of the same transactions or occurrences that are the subject of the plaintiff, Town of Bedford's (Bedford's) claims and the defendant Massport's cross-claims. This Court has jurisdiction of these cross-claims pursuant to 42 U.S.C. § 9613(b) and the doctrine of pendent jurisdiction.

2. In its Complaint, Bedford alleges that Raytheon,

Massport, the Air Force, and the Navy, presently own or operate,
and/or in the past owned or operated a facility or facilities,
and that Raytheon, Massport, the Air Force and the Navy handled,
disposed or otherwise arranged for the disposal of "hazardous
substances" within the meaning of section 101(14) of the
Comprehensive Environmental Response, Compensation and Liability
Act ("CERCLA"), 42 U.S.C. § 9601(14). The Complaint further
alleges that there have been releases and threatened releases of
hazardous substances from the facilities which have resulted in
contamination and threatened contamination of the soils, surface
waters, and groundwaters at Bedford's Hartwell Road Water
Treatment Plant and an aquifer located in Bedford from which
Bedford previously drew drinking water (the "Hartwell Aquifer").

3. In its Complaint, Bedford alleges that Raytheon,
Massport, the Air Force and the Navy are strictly and jointly and
severally liable under section 107(a)(4) of CERCLA, 42 U.S.C. §
9607(a)(4), for all response costs incurred and to be incurred by
Bedford, including all direct, indirect, consequential and future
costs of responding to the releases and threatened releases of
hazardous substances into the Hartwell aquifer.

4. In Count II of its Complaint, Bedford further alleges
that hazardous substances released, presently being released and
threatened to be further released by the defendants have caused
and continue to cause damage to natural resources, including the
Hartwell Aquifer.

5. Bedford further alleges that Raytheon, Massport, the Air

Force and the Navy are strictly and jointly and severally liable under sections 107(a) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9607(f), for damages for the injury to, destruction of and loss of use of Bedford's natural resources, including the reasonable costs of assessing such injury, destruction and loss. However, in a Memorandum dated January 15, 1991, the Court allowed the defendants' motions to dismiss Count II of Bedford's Complaint.

6. In its complaint, Bedford alleges that hazardous waste handling activities of Raytheon, Massport, the Air Force and the Navy each have presented an imminent and substantial endangerment to the environment, and that Bedford is therefore entitled to an injunction pursuant to 42 U.S.C. § 6972 directing that certain remedial actions be taken.

7. In its cross-claim, Massport alleges that the Air Force and Raytheon disposed of or released hazardous substances at one or more hazardous waste sites on Hanscom Field, and that as a result Massport has incurred expenses to investigate, monitor, assess and evaluate the hazardous waste sites, has incurred certain other costs in connection with the sites, and has suffered and continues to suffer damage to its real property as a result of the release and threat of release of hazardous substances.

8. In its cross-claim, Massport alleges that the Air Force and Raytheon are strictly, jointly and severally liable to Massport for reimbursement for the reasonable costs of Massport's

3

investigation, monitoring, assessment, containment and removal actions pursuant to 42 U.S.C. §§ 9607(a)(2)-(4), 9613(f) and 9620(a), and pursuant to M.G.L. c. 21E, §§ 4 and 5.

9. In its cross-claim, Massport alleges that the hazardous substances discharged at the Hanscom Airfield and at the Navy facility present an imminent and substantial endangerment to health and the environment, and that Massport is therefore entitled to an injunction pursuant to 42 U.S.C. § 6972 directing that Raytheon, the Air Force and the Navy undertake certain remedial actions with respect to the Hanscom Airfield and the Naval Weapons Industrial Reserve Plant.

### CROSS CLAIM OF AIR FORCE AGAINST MASSACHUSETTS PORT AUTHORITY

#### Count I

(Contribution under 42 U.S.C. § 9613(f) against Massport)

10. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

11. If the Air Force is adjudged to be liable to Bedford for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford in connection with the alleged contamination of the Hartwell Aquifer, or for all or a part of any injunctive relief as requested in Bedford's complaint, which liability the Air Force denies, then the Air Force is entitled to contribution from defendant Massport pursuant to 42 U.S.C. § 9613(f).

## COUNT II

### (Declaratory Judgment)

12. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

13. An actual, substantial and justiciable legal controversy exists as to whether Massport is liable to the Air Force as alleged herein for all or part of any judgment or other relief which Bedford may obtain against the Air Force.

14. Pursuant to 28 U.S.C. § 2201 the Air Force seeks a declaration that Massport is liable to the Air Force for all or a part of any judgment or other relief which Bedford may obtain against the Air Force in this action.

## CROSS CLAIM OF AIR FORCE AGAINST RAYTHEON

## COUNT III

### (Contribution under 42 U.S.C. § 9613(f) against Raytheon)

15. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

16. If the Air Force is adjudged to be liable to Bedford for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford in connection with the alleged contamination of the Hartwell Aquifer, or for all or a part of any injunctive relief as requested in Bedford's complaint, which liability the Air Force denies, then the Air Force is entitled to contribution from defendant Raytheon Company

5

pursuant to 42 U.S.C. § 9613(f).

## COUNT IV

### (Declaratory Judgment)

17. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

18. An actual, substantial and justiciable legal controversy exists as to whether Raytheon is liable to the Air Force as alleged herein for all or part of any judgment or other relief which Bedford may obtain against the Air Force.

19. Pursuant to 28 U.S.C. § 2201 the Air Force seeks a declaration that Raytheon is liable to the Air Force for all or a part of any judgment or other relief which Bedford may obtain against the Air Force in this action.

## COUNT V

### (Contribution under 42 U.S.C. § 9613(f) against Raytheon as to claims of Massport)

20. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

21. If the Air Force is adjudged to be liable to Massport for all or a portion of the alleged costs of Massport's investigation, monitoring, assessment, containment and removal, and/or for damages to Massport's property as alleged in Massport's cross-claim, which liability the Air Force denies, then the Air Force is entitled to contribution from defendant Raytheon Company pursuant to 42 U.S.C. § 9613(f).

6

## COUNT VI

(Declaratory Judgment as to claims of Massport)

22. The Air Force repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

23. An actual, substantial and justiciable legal controversy exists as to whether Raytheon is liable to the Air Force as alleged herein for all or part of any judgment or other relief which Massport may obtain against the Air Force, or for all or part of any judgment or other relief which Massport may obtain against the Air Force.

24. Pursuant to 28 U.S.C. § 2201 the Air Force seeks a declaration that Raytheon is liable to the Air Force for all or a part of any judgment or other relief which Massport may obtain against the Air Force in this action, and that Raytheon is liable to the Air Force for all or a part of any judgment or other relief which Massport may obtain against the Air Force in this action.

## CROSS CLAIM OF NAVY AGAINST
## MASSACHUSETTS PORT AUTHORITY

## COUNT VII

(Contribution under 42 U.S.C. § 9613(f) against Massport)

25. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

26. If the Navy is adjudged to be liable to Bedford for all or a portion of the alleged costs of response actions incurred

and to be incurred by Bedford in connection with the alleged contamination of the Hartwell Aquifer, or for all or a part of any injunctive relief as requested in Bedford's complaint, which liability the Navy denies, then the Navy is entitled to contribution from defendant Massport pursuant to 42 U.S.C. § 9613(f).

## COUNT VIII

### (Declaratory Judgment)

27. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

28. An actual, substantial and justiciable legal controversy exists as to whether Massport is liable to the Navy as alleged herein for all or part of any judgment or other relief which Bedford may obtain against the Navy.

29. Pursuant to 28 U.S.C. § 2201 the Navy seeks a declaration that Massport is liable to the Navy for all or a part of any judgment or other relief which Bedford may obtain against the Navy in this action.

### CROSS CLAIMS OF NAVY
### AGAINST RAYTHEON COMPANY

## COUNT IX

### (Contractual indemnification against Raytheon)

30. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 of these cross-claims as if fully set forth herein.

31. Since approximately 1952 the United States has owned

the land and certain facilities consisting of the Naval Weapons
Industrial Reserve Plant ("NWIRP"), located generally south of
Hartwell Road and east of the Raytheon Systems Laboratory
facility in Bedford, Massachusetts. Pursuant to a series of
Facilities Use contracts between the Navy and Raytheon, Raytheon
has operated the NWIRP facility.

32. Upon information and belief, the Facilities Use
contracts governing Raytheon's operation of the NWIRP facility
have contained language identical or similar to the following:

> Indemnification of the Government. The Contractor
> shall indemnify the Government and hold it harmless
> against claims for injury to persons or damage to
> property of the Contractor or others arising from the
> Contractor's possession or use of the facilities under
> this contract.

33. Any release or threat of release of hazardous
substances or hazardous wastes at or from the NWIRP facility
arose from Raytheon's possession or use of the facilities under
the pertinent Facilities Use contracts.

34. If the Navy is adjudged to be liable to Bedford for all
or a portion of the alleged costs of response actions incurred
and to be incurred by Bedford in connection with the alleged
contamination of the Hartwell Aquifer, or for all or a part of
any injunctive relief as requested in Bedford's complaint, which
liability the Navy denies, then under the terms of the applicable
Facilities Use contracts between the Navy and Raytheon, the Navy
is entitled to indemnification from Raytheon for all of such
liability.

## COUNT X

### (Contribution under 42 U.S.C. § 9613(f) against Raytheon)

35. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 and 31 through 34 of these cross-claims as if fully set forth herein.

36. If the Navy is adjudged to be liable to Bedford for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford in connection with the alleged contamination of the Hartwell Aquifer, or for all or a part of any injunctive relief as requested in Bedford's complaint, which liability the Navy denies, then the Navy is entitled to contribution from defendant Raytheon pursuant to 42 U.S.C. § 9613(f).

## COUNT XI

### (Declaratory Judgment)

37. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 and 31 through 34 of these cross-claims as if fully set forth herein.

38. An actual, substantial and justiciable legal controversy exists as to whether Raytheon is liable to the Navy as alleged herein for all or part of any judgment or other relief which Bedford may obtain against the Navy.

39. Pursuant to 28 U.S.C. § 2201 the Navy seeks a declaration that Raytheon is liable to the Navy for all or a part of any judgment or other relief which Bedford may obtain against the Navy in this action.

## COUNT XII

### (Contractual indemnification
### as to claims of Massport)

40. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 and 31 through 34 of these cross-claims as if fully set forth herein.

41. If the Navy is adjudged liable for all or a part of injunctive relief as requested by Massport in its cross-claim, which liability the Navy denies, then under the terms of the applicable Facilities Use contracts between the Navy and Raytheon, the Navy is entitled to indemnification from Raytheon for all of such liability.

## COUNT XIII

### (Declaratory Judgment as to claims of Massport)

42. The Navy repeats and incorporates by reference the allegations of paragraphs 1 through 9 and 31 through 34 of these cross-claims as if fully set forth herein.

43. An actual, substantial and justiciable legal controversy exists as to whether Raytheon is liable to the Navy as alleged herein for all or part of any judgment or other relief which Massport may obtain against the Navy or for all or part of any judgment or other relief which Massport may obtain against the Navy.

44. Pursuant to 28 U.S.C. § 2201 the Navy seeks a declaration that Raytheon is liable to the Navy for all or a part of any judgment or other relief which Massport may obtain against the Navy in this action.

WHEREFORE, the Air Force and the Navy request that the Court:

1. Enter judgment for the Air Force against Massport and/or Raytheon in an amount equal to any judgment, costs of any injunction, or other relief entered against the Air Force in excess of the Air Force's equitable, proportionate share;

2. Enter judgment for the Air Force against Raytheon in an amount equal to any liability or costs of other relief incurred or to be incurred by the Air Force in connection with Massport's cross-claim against the Air Force;

3. Enter a declaratory judgment for the Air Force against Massport and/or Raytheon declaring that Massport and/or Raytheon are liable to the Air Force for all or a part of any judgment or costs of any injunction, or other relief entered or to be entered against the Air Force in connection with Bedford's and/or Massport's claims against the Air Force.

4. Award the Air Force its costs, and interest;

5. Enter judgment for the Navy against Massport and/or Raytheon in an amount equal to any judgment or other relief entered against the Navy in excess of the Navy's equitable, proportionate share;

6. Enter judgment for the Navy against Raytheon in an amount equal to any liability or costs of other relief incurred or to be incurred by the Navy in connection with Massport's cross-claim against the Navy;

7. Enter a declaratory judgment for the Navy against

Massport and/or Raytheon declaring that Massport and/or Raytheon are liable to the Navy for all or a part of any judgment, costs of any injunction, or other relief entered or to be entered against the Navy in connection with Bedford's and/or Massport's claims against the Navy;

    8.  Award the Navy its costs and interest; and

    9.  Award such other relief as is just and proper.

                              WAYNE A. BUDD
                              United States Attorney

Dated: April 12, 1991

               By:
                              George B. Henderson, II
                              Assistant U.S. Attorney
                              1107 J.W. McCormack POCH
                              Boston, MA 02109
OF COUNSEL:                    (617) 223-9407

Capt. Theresa McDevitt
Dept. of the Air Force
Headquarters, United States
  Air Force
USAF/JACE
Washington, DC 20332-6128

Nancy Dougherty-Glazier
Department of the Navy
Office of the General Counsel
  (Litigation)
Crystal Plaza No. 6, Room 1008
2221 Jefferson Davis Highway
Arlington, VA 22202

### CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on April 12, 1991.

                              George B. Henderson, II
                              Assistant U.S. Attorney

# EXHIBIT A-3

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME Alfie M. Paul | | DATE NOV 0 9 2017 |
| TITLE Director of Archival Operations | | |
| NAME AND ADDRESS OF DEPOSITORY | | |
| The National Archives at Boston 380 Trapelo Road Waltham, MA 02452 | | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TOWN OF BEDFORD,                    )
                                   )
              Plaintiff,           )
                                   )
          v.                       )  Civil Action      **DOCKETED**
                                   )  No. 89-2313-WD
RAYTHEON COMPANY,                  )
MASSACHUSETTS PORT AUTHORITY,      )
U.S. DEPARTMENT OF THE AIR FORCE   )
     and                           )
U.S. DEPARTMENT OF THE NAVY,       )
                                   )
              Defendants.          )
                                   )
RAYTHEON COMPANY,                  )
                                   )
     Defendant/Third Party         )
     Plaintiff,                    )
                                   )
          v.                       )
                                   )
NEW ENGLAND NURSERIES & GARDEN     )
CENTERS, INC., ET AL.,             )
                                   )
     Third-party Defendants.       )

## STIPULATION OF DISMISSAL

The Department of the Navy ("Navy"), the Department of the
Air Force ("Air Force"), and Raytheon Company ("Raytheon"),
through their undersigned counsel, hereby stipulate that all
cross-claims asserted in this action by the Navy and the Air
Force against Raytheon are hereby dismissed with prejudice and

without costs, pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, waiving all rights of appeal.

Respectfully submitted,

A. JOHN PAPPALARDO
United States Attorney

By: _____
George B. Henderson, II
Assistant U.S. Attorney
1107 J.W. McCormack POCH
Boston, MA 02109
(617) 223-9403

RAYTHEON COMPANY,

By its attorneys,

_____
Allan van Gestel, Esq., BBO# 507760
Christopher P. Davis, Esq.,
BBO # 115590
Goodwin, Procter & Hoar
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

3/31/93

2

# EXHIBIT A-4

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME<br>Alfie M. Paul | | NOV 0 9 2017 |
| TITLE<br>Director of Archival Operations | | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TOWN OF BEDFORD,                         )
                                         )
            Plaintiff,                   )
                                         )      CIVIL ACTION
v.                                       )      NO. 89-2313-WD
                                         )
RAYTHEON COMPANY,                        )
MASSACHUSETTS PORT AUTHORITY,            )
UNITED STATES DEPARTMENT OF THE          )
AIR FORCE AND UNITED STATES              )            
DEPARTMENT OF THE NAVY,                  )
                                         )
            Defendants,                  )
                                         )
RAYTHEON COMPANY,                        )
                                         )
            Defendant/Third-Party        )
            Plaintiff,                   )
                                         )
v.                                       )
                                         )
NEW ENGLAND NURSERIES ~& GARDEN          )
CENTERS, INC. and NATHANIEL K.           )
BROWN,                                   )
                                         )
            Third-Party Defendants.      )
_____ )

## CONSENT JUDGMENT

The parties to this action have appeared before this Court
and reported a compromise of the claims, cross-claims and third-
party claims between them.  Accordingly, it is hereby ordered and
adjudged that all of the claims, cross-claims and third-party
claims are hereby dismissed with prejudice and without costs,
except the Court hereby retains jurisdiction for the sole and
limited purpose of implementing the provisions of the Separate
Agreements that:  (a) the plaintiff Town of Bedford and the
defendant Raytheon Company shall have the right to petition the
Court by motion pursuant to the terms of the separate documents

entitled "Agreement Between Town of Bedford and Department of the Navy Regarding Site Y" and "Settlement Agreement Between the Department of the Navy and the Department of the Air Force and Raytheon" dated January 29, 1993 (hereinafter "the Separate Agreements"); and b) Massport's cross-claims, to the extent made, against the Air Force that were on account of or arose out of any alleged releases or threats of releases of oil, hazardous materials, or hazardous substances (as defined, respectively, in M.G.L. c. 21E, §2, and 42 U.S.C. §9601(14)) at the Lawrence G. Hanscom Field at locations other than at Sites One through Five, inclusive (as identified in paragraphs 21 through 26, inclusive, of the "Joint Statement of Undisputed Material Facts Submitted by Defendants Massachusetts Port Authority and U.S. Department of the Air Force in Support of their Motions for Summary Judgment against Plaintiff Town of Bedford), are dismissed without prejudice.

If no party petitions this Court by motion pursuant to either of the Separate Agreements, the Department of the Navy shall notify the Court and the parties, whereupon the Court's retention of jurisdiction in this matter shall terminate.

Respectfully submitted,

| TOWN OF BEDFORD, | RAYTHEON COMPANY, |
|---|---|
| By its attorneys, | By its attorneys, |

Robert M. Hacking
Mark B. Lavoie
PARKER, COULTER, DALEY & WHITE
One Beacon Street
Boston, MA 02108
(617) 723-4500

Allan van Gestel
Christopher P. Davis
GOODWIN, PROCTER & HOAR
Exchange Place
Boston, MA 02108
(617) 570-1330

MASSACHUSETTS PORT AUTHORITY,

By its attorneys,

_____
William L. Lahey
PALMER & DODGE
One Beacon Street
Boston, MA 02108
(617) 573-0325

UNITED STATES DEPARTMENT OF
THE AIR FORCE & UNITED STATES
DEPARTMENT OF THE NAVY,

By its attorneys,

_____
George B. Henderson, Assistant
U.S. Attorney
Roberta Brown, Assistant U.S.
 Attorney
1107 J.W. McCormack Post
 Office and Court House
Boston, MA 02109
(617) 223-9407

NEW ENGLAND NURSERIES &
GARDEN CENTERS, INC. and
NATHANIEL K. BROWN,

By its attorneys,

_____
Jacob C. Diemert
SHERBURNE, POWERS & NEEDHAM
One Beacon Street
Boston, MA 02108
(617) 523-2700

DATE: _March 31, 1993_

So ordered this _31st_ day of March, 1993.

_____
Douglas P. Woodlock
United States District Court Judge

- 3 -

# EXHIBIT A-5

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| *Alfie m paul* | | DATE **NOV 09 2017** |
| NAME<br>Alfie M. Paul | | |
| TITLE<br>Director of Archival Operations | | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | | |

NA FORM 14007 (10-86 )

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TOWN OF BEDFORD,                    )
                                    )
            Plaintiff,              )
                                    )
            v.                      ) Civil Action
                                    ) No. 89-2313-WD
RAYTHEON COMPANY,                   )
MASSACHUSETTS PORT AUTHORITY,       )
U.S. DEPARTMENT OF THE AIR FORCE    )
      and                           )
U.S. DEPARTMENT OF THE NAVY,        )
                                    )
            Defendants.             )



ANSWER OF DEFENDANTS
U.S. DEPARTMENT OF THE AIR FORCE AND
U.S. DEPARTMENT OF THE NAVY

The defendants United States Department of the Air Force
("Air Force") and United States Department of the Navy ("Navy")
(collectively referred to as the "federal defendants") answer and
assert affirmative defenses to the plaintiff Town of Bedford's
Complaint as follows:

STATEMENT OF THE CASE

1.  Paragraph 1 of the Complaint consists of plaintiff's
summary of the complaint which requires no response.

2.  The first sentence of paragraph 2 is admitted.  The second
sentence is denied.  The federal defendants lack information or
knowledge sufficient to admit or deny the third sentence.  The
fourth sentence consists of plaintiff's characterization of the
relief sought, as to which no response is required.

3.  The federal defendants lack knowledge or information
sufficient to admit or deny the first sentence of paragraph 3.  The
second sentence is denied insofar as it applies to any wastes

generated by the federal defendants.

4. Paragraph 4 consists of conclusions of law which require no response.

5. Paragraph 5 consists of conclusions of law which require no response.

6. Paragraph 6 consists of plaintiff's jury demand as to which no response is required at this time.

DEFINED TERMS

7. Paragraph 7 of states a conclusion of law which requires no response.

8. Paragraph 8 states plaintiff's definition of a term which requires no response. The federal defendants state, however, that as used in this Answer the term "facility" includes the ordinary definition of the word.

9. Paragraph 9 states plaintiff's definition of a term which requires no response.

PARTIES

10. Admitted.

11. The allegations of paragraph 11 are not directed to the federal defendants and therefore no response is required.

12. The allegations of paragraph 12 are not directed to the federal defendants and therefore no response is required.

13. The Navy admits that since 1977 it has owned 36.65 acres, more or less, of land at the Naval Weapons Industrial Reserve Plant in Bedford, Massachusetts. All other allegations of paragraph 13

are denied.

14. The Air Force admits that it owned or operated land located at or near the area known as the Hanscom Air Field. Upon information and belief, the Air Force admits that it disposed of, or arranged for the disposal of hazardous substances at certain locations at the Air Field. The Air Force further states, however, that the United States is presently undertaking appropriate remedial actions, consistent with the National Contingency Plan, with respect to any releases of such hazardous substances. Any allegations inconsistent with the foregoing are denied.

15. Paragraph 15 of the Complaint states a conclusion of law which requires no response.

16. Paragraph 16 of the Complaint states a conclusion of law which requires no response.

17. Paragraph 17 of the Complaint states a conclusion of law which requires no response.

18. Paragraph 18 states plaintiff's definition of a term which requires no response.

## FACTUAL BACKGROUND

19. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 19.

20. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 20.

21. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 20.

22. The federal defendants lack information or knowledge

3

sufficient to admit or deny the allegations of paragraph 20.

23. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 20.

24. Paragraph 24 of the Complaint states a conclusion of law which requires no response.

25. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 25.

26. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 26.

27. Paragraph 27 of the Complaint states conclusions of law which require no response.

28. Paragraph 28 of the Complaint states conclusions of law which require no response.

29. Admitted.

30. Paragraph 30 of the Complaint states a conclusion of law which requires no response.

31. Paragraph 31 of the Complaint states a conclusion of law which requires no response.

32. Admitted.

33. Paragraph 33 of the Complaint states a conclusion of law which requires no response.

34. Paragraph 34 of the Complaint states a conclusion of law which requires no response.

35. Admitted.

36. Paragraph 36 of the Complaint states a conclusion of law which requires no response.

37. Paragraph 37 of the Complaint states a conclusion of law which requires no response.

38. Paragraph 38 of the Complaint states a conclusion of law which requires no response.

39. Paragraph 39 of the Complaint states a conclusion of law which requires no response.

40. Paragraph 40 of the Complaint states a conclusion of law which requires no response.

41-63. Paragraphs 41-63 of the Complaint are not directed to the federal defendants and therefore no response is required.

64. The Navy admits that since 1977 it has owned 36.65 acres of land and certain facilities at the NWIRP, and that since approximately 1953 defendant Raytheon Company ("Raytheon") has operated the NWIRP. Upon information and belief the Navy further admits that Raytheon disposed of hazardous substances during its operation of the NWIRP. However, currently available information indicates that the quantities of hazardous substances disposed of by Raytheon at the facility were small. The Navy further states that since 1984 it has been diligently conducting remedial activities at the NWIRP facility pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., including a remedial investigation and feasibility study. The Navy will ensure that remedial activities at the NWIRP continue until completed, and that the facility is remediated in accordance with applicable federal standards. All allegations inconsistent with the foregoing are denied.

65. The Navy admits the allegations of paragraph 65, except the allegation that the NWIRP is a 46-acre site, which is denied.

66. The Navy admits that 36.65 acres of land, more or less, have been owned by the Navy since approximately 1977, and that certain of the facilities at the NWIRP have been owned by the Navy for various period of time, depending on the facility.

67. Insofar as paragraph 67 is directed to the Navy it is denied. Insofar as paragraph 67 is directed to defendant Raytheon no response is required of this defendant.

68. Admitted.

69. The Navy admits that by CNO letter ser 451/4U383534 dated March 26, 1984, the Chief of Naval Operations granted approval for the Naval Energy and Environmental Protection Support Activity to conduct an Initial Assessment Study for the purpose of identifying disposal sites and contaminated areas caused by hazardous substance storage, handling or disposal practices and resultant releases at the NWIRP facility. All allegations inconsistent with the foregoing are denied.

70. Denied. The Navy further states that the Initial Assessment Study speaks for itself.

71. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 71.

72. Insofar as the allegations of paragraph 72 of the Complaint are directed to the Air Force, upon information and belief the Air Force admits that it owns and/or has in the past owned lands at or near the Hanscom Field facility, and that at the

6

time of such ownership hazardous substances were disposed of at certain locations on the land. Insofar as the allegations are directed at defendant Massachusetts Port Authority ("Massport") no response is required. The Air Force lacks information or knowledge sufficient to admit or deny the remaining allegations of paragraph 72.

73. The Air Force admits that Hanscom Field is generally south of the Raytheon Systems Laboratory and NWIRP facilities. The Air Force lacks information or knowledge sufficient to admit or deny the remaining allegations of paragraph 73.

74. The Air Force admits that during certain periods of time the Air Force has owned and operated certain portions of what is now known as Hanscom Field. The Air Force is unable to admit or deny the remaining allegations of the first sentence of paragraph 74 because of the vagueness of the phrase "at all times relevant to this proceeding." The Air Force denies the allegations of the second sentence of paragraph 74.

75. The allegations of paragraph 75 are not directed to either of the federal defendants and therefore no response is required.

76-78. Upon information and belief, the Air Force admits the allegations of paragraphs 76 through 78 of the Complaint, except as to the word "numerous" in paragraph 76 which is denied. The Air Force further states, however, that it has diligently proceeded with a remedial investigation and feasibility study with respect to each of the five sites at the Hanscom Field facility and is

currently proceeding with remedial action to abate the releases of hazardous substances in a manner not inconsistent with the National Contingency Plan.

79. Denied.

80. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 80.

81. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 81.

82. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 82.

83. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 83.

84. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 84.

85. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 85.

86. The federal defendants lack information or knowledge sufficient to admit or deny the allegations of paragraph 86.

87. Denied.

88. Paragraph 88 of the Complaint states plaintiff's intentions which require no response.

89. The Navy admits that it received a letter dated October 13, 1989, alleging an imminent and substantial endangerment pursuant to the Resource Conservation and Recovery Act. The federal defendants lack information or knowledge sufficient to admit or deny the remaining allegations of paragraph 89.

90. Paragraph 90 of the Complaint states a conclusion of law which requires no response.

91. The United States realleges and incorporates by reference paragraphs 1 through 90 of this Answer.

92. Paragraph 92 of the Complaint recites a statute which speaks for itself.

93. Paragraph 93 of the Complaint states conclusions of law which require no response.

94. Insofar as the first sentence of paragraph 94 is directed to the Air Force, the allegation is admitted, subject to the clarification set forth in paragraphs 76-78 of this Answer. Insofar as the first sentence of paragraph 94 is directed to the Navy, the allegation is denied. The federal defendants deny the allegations of the second sentence of paragraph 94. To the extent the allegations of paragraph 94 are directed to Raytheon and Massport no response is required.

95. The federal defendants deny the allegations of the first sentence of paragraph 95 of the Complaint. The second sentence of paragraph 95 states conclusions of law which require no response.

96. Paragraph 96 of the Complaint states a conclusion of law which requires no response.

97. Paragraph 97 of the Complaint states a conclusion of law which requires no response.

98. Paragraph 98 of the Complaint states a conclusion of law which requires no response.

99. The federal defendants lack information or knowledge

sufficient to admit or deny the allegations of paragraph 99 of the Complaint.

100. To the extent the allegations of paragraph 100 of the Complaint are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

101. To the extent the allegations of paragraph 101 of the Complaint are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

102. The United States realleges and incorporates by reference paragraphs 1 through 102 of this Answer.

103. Paragraph 103 of the Complaint recites a statute which speaks for itself.

104. Paragraph 104 of the Complaint recites a statute which speaks for itself.

105. Paragraph 105 of the Complaint states a conclusion of law which requires no response.

106. To the extent the allegations of paragraph 106 of the Complaint are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

107. To the extent the allegations of paragraph 107 of the Complaint are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

108.   To the extent the allegations of paragraph 107 of the Complaint are directed to the federal defendants the allegations are denied.   To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

109.   To the extent the allegations of paragraph 109 of the Complaint are directed to the federal defendants the allegations are denied.   To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

110.   Paragraph 110 of the Complaint states a conclusion of law which requires no response.   To the extent an answer is required, the allegation is denied insofar as it is directed to the federal defendants.   Insofar as the allegation is directed to Raytheon and Massport no response is required.

111.   Paragraph 111 of the Complaint states a conclusion of law which requires no response.   To the extent an answer is required, the allegation is denied insofar as it is directed to the federal defendants.   Insofar as the allegation is directed to Raytheon and Massport no response is required.

112.   The federal defendants reallege and incorporate by reference paragraphs 1 through 111 of this Answer.

113.   Paragraph 113 of the Complaint recites a statute which speaks for itself.

114.   Paragraph 114 of the Complaint states a conclusion of law which requires no response.

115.   To the extent the allegations of paragraph 115 of the Complaint are directed to the federal defendants the Air Force

admits that in the past it handled, stored and/or disposed of solid or hazardous wastes as those terms are defined in 42 U.S.C. §§ 6903(27) and 6903(5), respectively. The Navy denies the allegation. To the extent the allegations are directed to defendants Raytheon and Massport no response is required. All allegations of paragraph 115 of the Complaint inconsistent with the foregoing are denied.

116. Paragraph 116 of the Complaint states a conclusion of law which requires no response.

117. Paragraph 117 of the Complaint states a conclusion of law which requires no response.

118. Paragraph 118 of the Complaint states a conclusion of law which requires no~response.

119. Paragraph 119 of the Complaint states a conclusion of law which requires no response.

120. Admitted.

121. To the extent the allegations of paragraph 109 of the Complaint are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

122. Denied.

123. The United States realleges and incorporates by reference paragraphs 1 through 122 of this Answer.

124. Paragraph 124 of the Complaint recites a statute which speaks for itself.

125. Paragraph 125 of the Complaint states a conclusion of

law which requires no response.

126. The first sentence of paragraph 126 of the Complaint is a statement concerning plaintiff's request for relief which requires no response. To the extent the allegations of the second sentence of paragraph 109 are directed to the federal defendants the allegations are denied. To the extent the allegations are directed to defendants Raytheon and Massport no response is required.

127. Paragraph 127 of the Complaint states a conclusion of law which requires no response.

## GENERAL DENIAL

To the extent any allegation of the Complaint remains unanswered, the federal defendants deny such allegation.

## FIRST DEFENSE

The plaintiff's Complaint fails to state a claim upon which relief can be granted insofar as it seeks to recover for injury to, destruction of, or loss of natural resources.

## SECOND DEFENSE

The plaintiff's claim for injury to, destruction of, or loss of natural resources is barred by section 103(g) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9613(g).

## THIRD DEFENSE

The plaintiff's claim for response costs is barred to the extent such costs are duplicative of costs incurred by the United States and to the extent that they are not consistent with the National Contingency Plan.

## FOURTH DEFENSE

The plaintiff has failed properly to mitigate its damages alleged in the Complaint.

## RESERVATION OF CROSS-CLAIMS

The federal defendants reserve the right to assert cross-claims against the other defendants to this action.

WHEREFORE, the Air Force and Navy pray that this Court:

A.  Enter judgment against Town of Bedford dismissing the Complaint as against the federal defendants;

B.  Award the federal defendants their costs and disbursements in defending this action; and

C. Grant such further relief as the Court may deem just and appropriate.

Dated: September 28, 1990

WAYNE A. BUDD
United States Attorney

By: _____
George B. Henderson, II
Assistant U.S. Attorney
1107 J.W. McCormack POCH
Boston, MA 02109
(617) 223-9407
BBO # 230185

OF COUNSEL:

Capt. Terry McDevitt
Dept. of the Air Force
Headquarters, United States
   Air Force
USAF/JACE
Washington, DC  20332-6128

Department of the Navy
Office of the General Counsel
   (Litigation)
ATTN: Nancy Dougherty-Glazier
Crystal Plaza No. 6, Room 1008
2221 Jefferson Davis Highway
Arlington, VA  22202

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on September 28, 1990.

_____
George B. Henderson, II
Assistant U.S. Attorney

15

# EXHIBIT A-6

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *alfie m paul* | NOV 0 9 2017 |
| NAME | DATE |
| Alfie M. Paul | |
| TITLE | |
| Director of Archival Operations | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives at Boston 380 Trapelo Road Waltham, MA 02452 | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF BEDFORD, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
| | ) No. 89-2313-WD |
| RAYTHEON COMPANY, | ) |
| MASSACHUSETTS PORT AUTHORITY, | ) |
| U.S. DEPARTMENT OF THE AIR FORCE | ) |
| and | ) |
| U.S. DEPARTMENT OF THE NAVY, | ) |
| Defendants. | ) |
| | ) |
| RAYTHEON COMPANY, | ) |
| Defendant/Third Party Plaintiff, | ) |
| v. | ) |
| NEW ENGLAND NURSERIES & GARDEN CENTERS, INC., ET AL., | ) |
| Third-party Defendants. | ) |

MONTHLY REPORT OF THE U.S. DEPARTMENT OF THE NAVY
CONCERNING PROGRESS OF SUPPLEMENTAL
REMEDIAL INVESTIGATION AT NAVAL WEAPONS
INDUSTRIAL RESERVE PLANT AS OF JANUARY 31, 1993

Pursuant to the Court's Order dated January 31, 1992, the

United States Department of the Navy ("Navy") reports to the

Court and the parties on the progress concerning the Navy's

supplemental remedial investigation at the Naval Weapons

Industrial Reserve Plant ("NWIRP"), Bedford, Massachusetts, as of

January 31, 1993.

ACTIVITIES DURING THE REPORTING PERIOD

During the month of January 1993, the Navy's consultant, the

Halliburton NUS Team, continued the field investigations with the installation of additional small-diameter monitoring wells and conventional monitoring wells, of which the majority were located off-site. Development of these monitoring wells has begun. Approximately 50 percent of the wells have been developed.

The adverse weather (heavy rain and snow) conditions which occurred during the month of December, have continued into January, and have hampered the field investigation. These weather conditions have caused the existing "plywood road" in the wetland area to deteriorate rapidly. After discussing the matter with the Bedford Conservation Commission, the Navy purchased "Unimats," and has had them placed over the existing road to provide a temporary access into the Short-Term Measure area.

OUTSTANDING ISSUES

The Department of the Navy and the Department of Justice have prepared draft language for an Access Agreement with the town of Bedford for the purpose of measuring and sampling of off-site monitoring wells. The Navy expects to sign this Agreement in early February. The schedule for completing both the Remedial Investigation (RI) and Short-Term Remedial Measure (STM) field programs will have to be extended due to difficulties during mobilization and to adverse weather conditions that have delayed field activities.

PROJECTED ACTIVITY NEXT PERIOD

During the month of February the field investigations will continue with the installation of the monitoring wells and

pumping wells. The main tasks will be completion of the off-site monitoring wells and development and sampling of the groundwater monitoring wells. Data packages from validation activities will commence.

Respectfully submitted,

A. JOHN PAPPALARDO
United States Attorney

Dated: February 1, 1992        By: _____

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
1107 J.W. McCormack POCH
Boston, MA   02109
(617) 223-9417

OF COUNSEL:

Department of the Navy
Office of the General Counsel
  (Litigation)
ATTN: Nancy Dougherty-Glazier
Crystal Plaza No. 6, Room 1008
2221 Jefferson Davis Highway
Arlington, VA  22202

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on this date.

Dated: February 1, 1992

GEORGE B. HENDERSON, II

# EXHIBIT A-7

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

correct copy of documents in his custody.



| SIGNATURE | *alfiem paul* | |
|---|---|---|
| NAME<br>Alfie M. Paul | | DATE<br>NOV 0 9 2017 |
| TITLE<br>Director of Archival Operations | | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TOWN OF BEDFORD, | ) |
| plaintiff, | ) |
| v. | ) |
| RAYTHEON COMPANY, MASSACHUSETTS PORT AUTHORITY, U.S. DEPARTMENT OF THE AIR FORCE and U.S. DEPARTMENT OF THE NAVY, | ) |
| defendants, | ) |
| RAYTHEON COMPANY, | ) |
| defendant/third party plaintiff, | ) |
| v. | ) |
| NEW ENGLAND NURSERIES & GARDEN CENTERS INC. and NATHANIEL K. BROWN, | ) |
| third party defendants. | ) |

CIVIL ACTION
No: 89-2313-WD



## ANSWER OF RAYTHEON COMPANY TO CROSS-CLAIM OF U.S. DEPARTMENT OF THE AIR FORCE AND U.S. DEPARTMENT OF THE NAVY AND CROSS-CLAIM

### ANSWER

Defendant Raytheon Company ("Raytheon") hereby answers the cross-claim of defendants U.S. Department of the Air Force (the "Air Force") and the U.S. Department of the Navy (the "Navy") (collectively, the "United States"). All allegations that pertain to multiple defendants are admitted or denied only as such allegations apply to Raytheon.



## First Defense

1.    Raytheon states that the allegations contained in the first sentence in paragraph 1 consist of a prefatory statement of the purported nature and basis of the cross-claim and are declaratory statements for which no responsive pleading is necessary.  The allegations contained in the second sentence in paragraph 1 state conclusions of law for which no responsive pleading is required.

2.    Raytheon states that the allegations contained in paragraph 2 refer to the complaint filed by the plaintiff Town of Bedford ("Bedford") in this action, a written document which speaks for itself and therefore no answer is required.  To the extent that the allegations in paragraph 2 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required.  To the extent that the allegations in paragraph 2 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

3.    Raytheon states that the allegations contained in paragraph 3 refer to the complaint filed by Bedford in this action, a written document which speaks for itself and therefore no answer is required.  To the extent that the allegations in paragraph 3 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required.  To the extent that the allegations in paragraph 3 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

4. Raytheon states that the allegations contained in paragraph 4 refer to the complaint filed by Bedford in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 4 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

5. Raytheon states that the allegations contained in paragraph 5 refer to the complaint filed by the Bedford in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 5 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required. Raytheon admits that this Court, in a Memorandum dated January 15, 1991, allowed defendants' motions to dismiss Count II of plaintiff's complaint.

6. Raytheon states that the allegations contained in paragraph 6 refer to the complaint filed by the plaintiff Town of Bedford in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 6 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required. To the extent that the allegations in paragraph 6 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

7. Raytheon states that the allegations contained in paragraph 7 refer to the cross-claim filed by defendant

4.    Raytheon states that the allegations contained in paragraph 4 refer to the complaint filed by Bedford in this action, a written document which speaks for itself and therefore no answer is required.  To the extent that the allegations in paragraph 4 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

5.    Raytheon states that the allegations contained in paragraph 5 refer to the complaint filed by the Bedford in this action, a written document which speaks for itself and therefore no answer is required.  To the extent that the allegations in paragraph 5 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required.  Raytheon admits that this Court, in a Memorandum dated January 15, 1991, allowed defendants' motions to dismiss Count II of plaintiff's complaint.

6.    Raytheon states that the allegations contained in paragraph 6 refer to the complaint filed by the plaintiff Town of Bedford in this action, a written document which speaks for itself and therefore no answer is required.  To the extent that the allegations in paragraph 6 repeat or paraphrase conclusions of law stated in plaintiff's complaint, no responsive pleading is required.  To the extent that the allegations in paragraph 6 repeat or paraphrase factual averments in plaintiff's complaint, Raytheon denies the same.

7.    Raytheon states that the allegations contained in paragraph 7 refer to the cross-claim filed by defendant

Massachusetts Port Authority ("Massport") in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 7 repeat or paraphrase factual averments in Massport's cross-claim, Raytheon denies the same.

8. Raytheon states that the allegations contained in paragraph 8 refer to the cross-claim by Massport in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 8 repeat or paraphrase conclusions of law stated in Massport's cross-claim, no responsive pleading is required.

9. Raytheon states that the allegations contained in paragraph 9 refer to the cross-claim by Massport in this action, a written document which speaks for itself and therefore no answer is required. To the extent that the allegations in paragraph 9 repeat or paraphrase conclusions of law stated in Massport's cross-claim, no responsive pleading is required.

10.--14. Raytheon states that the allegations contained in paragraphs 10 through 14 are directed against Massport and therefore no responsive pleading is required.

15. In response to paragraph 15, Raytheon restates and incorporates its answers to paragraphs 1 through 9 as if fully restated herein.

16. Raytheon denies the allegations contained in paragraph 16.

17. In response to paragraph 17, Raytheon restates and incorporates its answers to paragraphs 1 through 9 as if fully restated herein.

18. Raytheon admits the allegations contained in paragraph 18.

19. Raytheon states that the allegations contained in paragraph 19 are declarative of the relief sought by the Air Force and therefore no responsive pleading is required.

20. In response to paragraph 20, Raytheon restates and incorporates its answers to paragraphs 1 through 9 as if fully restated herein.

21. Raytheon denies the allegations contained in paragraph 21.

22. In response to paragraph 22, Raytheon restates and incorporates its answers to paragraphs 1 through 9 as if fully restated herein.

23. Raytheon admits the allegations contained in paragraph 23.

24. Raytheon states that the allegations contained in paragraph 24 are declarative of the relief sought by the Air Force and therefore no responsive pleading is required.

25.-- 29. Raytheon states that the allegations contained in paragraphs 25 through 29 are directed against Massport and therefore no responsive pleading is required.

30. In response to paragraph 30, Raytheon restates and incorporates its answers to paragraphs 1 through 9 as if fully restated herein.

31. Raytheon admits the allegations contained in paragraph 31.

32. Raytheon states that the allegations contained in paragraph 32 refer to specific facilities contracts between Raytheon and the Navy. Said contracts are written documents which speak for themselves and for which no answer is required. In addition, Raytheon denies any allegation in paragraph 32 which is at variance with the terms thereof.

33. Raytheon states that no response is necessary because this paragraph states conclusions of law and, to the extent that the allegations in paragraph 33 require a response, denies the allegations as stated.

34. Raytheon states that the allegations contained in paragraph 34 state conclusions of law for which no responsive pleading is required. To the extent that the allegations contained in paragraph 34 refer to specific facilities contracts between Raytheon and the Navy, said contracts speak for themselves and no answer is required. To the extent that paragraph 34 contains factual averments, Raytheon denies the same.

35. In response to paragraph 35, Raytheon restates and incorporates its answers to paragraphs 1 through 9 and 31 through 34 as if fully restated herein.

36. Raytheon denies the allegations contained in paragraph 36.

37. In response to paragraph 37, Raytheon restates and incorporates its answers to paragraphs 1 through 9 and 31 through 34 as if fully restated herein.

38. Raytheon admits the allegations contained in paragraph 38.

39. Raytheon states that the allegations contained in paragraph 39 are declarative of the relief sought by the Navy and therefore no responsive pleading is required.

40. In response to paragraph 40, Raytheon restates and incorporates its answers to paragraphs 1 through 9 and 31 through 34 as if fully restated herein.

41. Raytheon denies the allegations contained in paragraph 41.

42. In response to paragraph 42, Raytheon restates and incorporates its answers to paragraphs 1 through 9 and 31 through 34 as if fully restated herein.

43. Raytheon admits the allegations contained in paragraph 43.

44. Raytheon states that the allegations contained in paragraph 44 are declarative of the relief sought by the Navy and therefore no responsive pleading is required.

### Second Defense

The United States' claims fail to state causes of action upon which relief may be granted.

### Third Defense

The United States' claims are barred in whole or in part by the equitable doctrine of laches.

### Fourth Defense

The United States' claims are barred in whole or in part by the equitable doctrine of estoppel.

### Fifth Defense

The United States' claims are barred in whole or in part by the doctrine of waiver.

### Sixth Defense

The United States' claims are barred in whole or in part by the equitable doctrine of unclean hands.

### Seventh Defense

The United States' claims are barred in whole or in part by the applicable statute of limitations.

### Eighth Defense

Raytheon was not negligent in causing any of the damages for which the United States seeks relief in its cross-claim.

### Ninth Defense

Any losses suffered by the United States were not and will not be caused by acts or omissions of Raytheon.

### Tenth Defense

The United States is guilty of negligence and/or contributory negligence which bars or reduces the liability of Raytheon.

### Eleventh Defense

The United States' claims are barred in whole or in part by the doctrine of assumption of risk.

### Twelfth Defense

Raytheon's conduct at all time constituted reasonable care which did not cause or contribute to the alleged damages and costs for which the United States seeks to hold Raytheon liable.

### Thirteenth Defense

Raytheon is not responsible or liable for the acts or omissions undertaken by, or at the direction of, United States authority.

### Fourteenth Defense

The United States' claims are barred or diminished by its failure to mitigate damages.

### Fifteenth Defense

Raytheon at all relevant times complied with all applicable laws, regulations and standards governing its conduct.

### Sixteenth Defense

The United States' claims are barred because the United States, as owner of the Naval Weapons Industrial Reserve Plant in Bedford, Massachusetts ("NWIRP") and as operator/owner of The Lawrence G. Hanscom Field in Bedford, Massachusetts ("Hanscom Field") is strictly, jointly and severally liable for the alleged damages and costs for which it seeks to hold Raytheon liable.

### Seventeenth Defense

The United States' claims are barred because the United States, by its acts and/or omissions, caused and/or is otherwise legally responsible for causing the releases and/or threats of releases for which it seeks to hold Raytheon liable.

### Eighteenth Defense

The United States lacks standing to assert one or more claims set forth in its cross-claim.

### Nineteenth Defense

Raytheon at all relevant times acted reasonably and in good faith and with due care for the rights and safety of others and their property.

### Twentieth Defense

The United States has failed to comply with the statutory and regulatory conditions precedent for the maintenance of its cross-claim against Raytheon and, accordingly, the Court lacks subject matter jurisdiction.

### Twenty-First Defense

The United States has failed to comply with the contractual conditions precedent for the maintenance of its contractual indemnification claims against Raytheon and, accordingly, the Court lacks subject matter jurisdiction.

### Twenty-Second Defense

The United States' contractual indemnification claims relate to contracts between the United States and Raytheon and, accordingly, the Court lacks subject matter jurisdiction over

such claims.

### Twenty-Third Defense

Raytheon's conduct did not and does not give rise to an imminent and substantial endangerment to the public health or to the environment.

### Twenty-Fourth Defense

To the extent any costs or damages are attributable to Raytheon, which Raytheon expressly denies, such costs or damages are apportionable, thereby precluding joint and several liability from being imposed on Raytheon.

### Twenty-Fifth Defense

In the event Raytheon is held responsible for any of the damages and costs alleged in the United States' cross-claim and affirmative relief is granted against Raytheon, then Raytheon's liability should be proportionate to its contribution to the alleged damages and costs.

### Twenty-Sixth Defense

The releases or threatened releases of hazardous substances, hazardous waste, hazardous material and/or oil alleged in the United States' cross-claim, and any costs or damages resulting therefrom, were caused by the acts or omissions of third-parties over whom Raytheon has and had no control, and Raytheon took reasonable precautions against foreseeable acts or omissions of any third party and the consequences that could foreseeably result from such acts or omission.

### Twenty-Seventh Defense

The costs incurred or to be incurred by the United States in this action were neither necessary nor consistent with the National Contingency Plan and therefore may not be recovered from Raytheon pursuant to 42 U.S.C. § 9607.

### Twenty-Eighth Defense

Recovery against Raytheon is barred to the extent it arises out of costs, expenses and other relief incurred before the effective dates of CERCLA and RCRA and to the extent it represents recovery other than "response" costs as defined by those statutes.

### Twenty-Ninth Defense

The United States' alleged causes of action against Raytheon are barred or limited insofar as the conditions and any costs, damages and expenses allegedly incurred or to be incurred by the United States are solely the result of intervening and supervening acts and omissions of persons over whom Raytheon had no control.

### Thirtieth Defense

The United States cannot recover against Raytheon, as the United States Constitution, CERCLA and RCRA prevent the retroactive imposition of liability, joint and several or otherwise, for acts and omissions of Raytheon that were in compliance with applicable local, state and federal laws and regulations in effect at the time such acts and omissions occurred.

### Thirty-First Defense

The United States' alleged claims are barred by the doctrine of unjust enrichment.

### Thirty-Second Defense

While Raytheon denies that it is liable for any claims, in the event it is found liable, it is entitled to an offset against any such alleged liability for: (1) any amounts actually paid by any person or entity heretofore or hereafter for any of the injuries, costs, damages, and expenses alleged in the United States' cross-claim; or (2) any amounts stipulated or otherwise agreed to in any release or covenant not to sue any person or entity heretofore or hereafter for any of the injuries, costs, damages and expenses alleged in Massport's cross-claim; or (3) the equitable share of the liability of any person or entity that heretofore has received, or hereafter receives, any release from liability or covenant not to sue with respect to the injuries, costs, damages and expenses alleged in the United States' cross-claim.

### Thirty-Third Defense

Raytheon's acts and/or omissions, if any, were neither the cause in fact nor the legal cause of the alleged costs or damages incurred or to be incurred by the United States.

### Thirty-Fourth Defense

The alleged release of hazardous substances, hazardous waste, hazardous materials and/or oil and the alleged damage resulting therefrom were caused by willful, intentional,

reckless and/or criminal acts of third parties over whom
Raytheon exercised no control in law or in fact, which acts
constituted independent, intervening and superseding causes and
the sole proximate causes of the damages alleged.

### Thirty-Fifth Defense

Raytheon was not negligent in generating, handling,
storing, treating, transporting or disposing of any solid or
hazardous waste and therefore cannot be held liable for actual
or potential imminent and substantial endangerment to health or
the environment.

### Thirty-Sixth Defense

The acts and/or omissions of the United States were the
direct and proximate cause of the alleged damages and costs for
which the United States seeks to hold Raytheon liable.

### Thirty-Seventh Defense

Raytheon has not contributed and is not contributing to the
past or present handling, storage, treatment, transportation or
disposal of any solid or hazardous waste which has presented or
may present an actual or potential imminent and substantial
endangerment to health or the environment.

### Thirty-Eighth Defense

The United States is barred from recovering against
Raytheon as the United States, by its acts and/or omissions,
has contributed and is contributing to the past or present
handling, storage, treatment, transportation or disposal of the
solid or hazardous waste for which it seeks to hold Raytheon

liable for presenting an actual or potential imminent and substantial endangerment to health or the environment.

### Thirty-Ninth Defense

The alleged release of hazardous substances, hazardous waste, hazardous materials and/or oil and the alleged damage resulting therefrom were caused by willful and/or intentional acts of the United States over whom Raytheon exercised no control in law or in fact, which acts constituted independent, intervening and superseding causes and the sole proximate causes of the damages and costs alleged.

### Fortieth Defense

The United States is barred from recovering against Raytheon as the United States was a person who, at the time of the alleged disposal of hazardous substances for which is seeks to hold Raytheon liable, owned or operated the facility at which such hazardous substances were allegedly disposed.

### Forty-First Defense

The United States is barred from recovering against Raytheon as the United States, by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances, which hazardous substances caused the United States to allegedly incur the damages and costs for which it seeks to hold Raytheon liable.

### Forty-Second Defense

The United States is barred from recovering against Raytheon as the United States is (1) the owner or operator of a

site from or at which there is or has been releases or threats
of releases of oil or hazardous material; (2) a person who at
the time of storage or disposal of any hazardous material owned
or operated a site at or upon which such hazardous material was
stored or disposed of and from which there is or has been
releases or threats of releases of hazardous material; (3) a
person who by contract, agreement, or otherwise, directly or
indirectly, arranged for the transport, disposal, storage or
treatment of hazardous material to or in a site from or at
which there is or has been releases or threats of releases of
hazardous material; (4) a person who, directly or indirectly,
transported any hazardous material to sites from or at which
there is or has been releases or threats of releases of such
material; and/or (5) a person who otherwise caused or is
legally responsible for releases or threats of releases of oil
or hazardous material from a site, for which releases and/or
threats of releases the United States seeks to hold Raytheon
liable.

### Forty-Third Defense

The United States is not entitled to recover damages for
claimed remedial actions that have not yet been undertaken nor
is it entitled to recover damages it has not yet incurred but
which it claims it will incur in the future.

### Forty-Fourth Defense

The United States is barred from recovering against
Raytheon as Raytheon has an absolute right to indemnification

from the United States pursuant to its facilities contracts and production contracts with the United States for damages suffered by the Town of Bedford as a result of the release or threat of release of hazardous substances caused in part or in whole by Raytheon in the performance of the aforesaid government contracts.

### CROSS-CLAIM AGAINST THE AIR FORCE AND THE NAVY

Subject to and without waiving the foregoing defenses, Raytheon hereby cross-claims against the Air Force and the Navy as follows:

1.  This cross-claim arises out of the same transactions, occurrences and set of circumstances as Bedford's and Massport's claims for relief. Jurisdiction regarding this cross-claim is proper in this Court pursuant to 42 U.S.C. § 9613(b), 28 U.S.C. § 2201 and the doctrine of ancillary jurisdiction. Venue is proper in this Court pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) as the claims herein arose in this district.

2.  In its complaint, Bedford alleges that Raytheon, Massport, the Air Force and the Navy, as owners or operators of a facility or facilities, handled and disposed or otherwise arranged for the disposal of "hazardous substances" within the meaning of Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601(14), in such a manner as to cause releases and threatened releases of hazardous substances and that these

practices resulted, and continue to result in contamination and threatened contamination of the soils, surface waters, and groundwaters at Bedford's Hartwell Road Water Treatment Plant and an aquifer located in Bedford from which Bedford's drinking water was previously derived by way of its "well no. 10," "well no. 11," and "well no. 12" (the "Hartwell Aquifer").

3. In its complaint, Bedford alleges that Raytheon, Massport, the Air Force and the Navy are strictly and jointly and severally liable under Section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A) for response costs incurred and to be incurred by Bedford, including all direct, indirect, consequential and future costs of responding to the releases and threatened releases of hazardous substances into the Hartwell Aquifer.

4. In its complaint, Bedford alleges that Raytheon, Massport, the Air Force and the Navy are strictly and jointly and severally liable under Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B) for response costs incurred and to be incurred by Bedford, including all direct, indirect, consequential and future costs of responding to the releases and threatened releases of hazardous substances into the Hartwell Aquifer.

5. In its complaint, Bedford alleges that Raytheon, Massport, the Air Force and the Navy are strictly and jointly and severally liable under Sections 107(a) and 107(f) of CERCLA, 42 U.S.C. §§ 9607(a) and 9607(f), for damages for the

injury to, destruction of and loss of use of Bedford's natural resources, including the reasonable costs of assessing such injury, destruction and loss. This claim, however, has been dismissed by order of the Court dated January 15, 1991.

6. Massport currently owns and operates Lawrence G. Hanscom Field, a civilian airport, and the portion of NWIRP not owned by the United States, all of which is located in Bedford, Massachusetts (the "Massport Property").

7. Massport has cross-claimed against Raytheon for the reasonable costs of Massport's investigation, monitoring, assessment, containment and removal actions pursuant to 42 U.S.C. §§ 9607 (a)(2)-(4), 9613 (f) and 9620 (a), M.G.L. c. 21E, §§ 4 and 5 and under various theories of indemification and contribution.

8. In its answer to Bedford's complaint and its cross-claim against Raytheon, the United States admits (i) that the Air Force has operated Hanscom Field and has owned or leased portions of the property that now constitute Hanscom Field and (ii) that it has owned since the early 1950's 36.65 acres, more or less, of land at the Naval Weapons Industrial Reserve Plant ("NWIRP") located generally south of Hartwell Road and east of Raytheon Systems Laboratory facility in Bedford, Massachusetts.

9. Upon information and belief, the United States owned or owns, and/or operated or operates, all or a portion of Hanscom Field, the Hanscom Air Force Base in Bedford, Massachusetts

which is adjacent to Hanscom Field, and NWIRP (collectively the "United States Property").

10. If Bedford or Massport proves their respective claims then the United States has, by its acts and/or omissions, caused, contributed to and/or is otherwise legally responsible for releases and/or threats of releases of hazardous substances, hazardous materials and/or oil at the United States Property which have allegedly contaminated the Hartwell Aquifer, the Massport Property, and the United States Property.

## COUNT I
### (Response Costs under 42 U.S.C §§ 9607(a) and 9620(a))

11. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 10 of this cross-claim.

12. Raytheon has incurred and/or will incur necessary costs of investigation, monitoring, assessment and evaluation in connection with the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property.

13. Raytheon has incurred and/or will incur necessary costs of response consistent with the National Contingency Plan in connection with the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property.

14. Raytheon is entitled to recover from the United States all or a portion of these and any other costs of investigation, monitoring, assessment, evaluation and response that it has and/or will incur.

## COUNT II
### (Contribution under 42 U.S.C. § 9613(f))

15. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 14 of this cross-claim.

16. With respect to the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property, upon information and belief, the United States is a "covered person" within the meaning of 42 U.S.C. § 9607(a), as it is "(1) the owner and operator of a . . . facility, [and] (2) . . . [a] person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of. . . ."

17. If Raytheon is adjudged to be liable to Bedford or Massport for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford or Massport in connection with the alleged contamination of the Hartwell Aquifer or the Massport Property, which liability Raytheon denies, then the United States is jointly and severally liable with Raytheon for those costs and Raytheon is entitled to contribution from the United States for those costs.

## COUNT III
### (Response Costs pursuant to M.G.L. c. 21E)

18. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 17 of this cross-claim.

19.  Raytheon has incurred and/or will incur costs of assessment, containment and removal in connection with the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property.

20.  Raytheon is entitled to recover from the United States pursuant to Mass. Gen. Laws c. 21E, § 4, all or a portion of these and any other costs of assessment, containment and removal that it has incurred and/or will incur.

### COUNT IV
### (Contribution under M.G.L. c. 21E)

21.  Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 20 of this cross-claim.

22.  The United States is a person liable within the meaning of Mass. Gen. Laws c. 21E, § 5.

23.  If Raytheon is adjudged to be liable to Bedford or Massport for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford or Massport in connection with the alleged contamination of the Hartwell Aquifer or the Massport Property, which liability Raytheon denies, then the United States is jointly and severally liable and Raytheon is entitled to contribution from the United States for those costs.

### COUNT V
### (Common Law and M.G.L. c. 231B
### Contribution and Indemnification)

24.  Raytheon repeats and incorporates as if fully set

forth herein, the allegations contained in paragraphs 1 through 23 of this cross-claim.

25. At all times relevant to this proceeding, Raytheon owned and operated a systems laboratory on the south side of Hartwell Road in Bedford, Massachusetts (the "Raytheon Systems Laboratory"). At all relevant times to this proceeding, Raytheon engaged in manufacturing, processing, testing and other activities at the Raytheon Systems Laboratory pursuant to contracts with the United States ("Systems Laboratory Production Contracts"). In the performance of these contracts, Raytheon was required to conform with the laws and regulations of the United States and the contract specifications as approved by the United States.

26. Since the 1950's, Raytheon has administered NWIRP pursuant to a series of facilities contracts with the United States (the "NWIRP Facilities Contracts"). Pursuant to the laws, regulations and contracts governing NWIRP, the United States controls facility modifications to NWIRP.

27. In addition to its administration of the NWIRP facility, Raytheon has engaged in manufacturing, processing, testing and other activities at NWIRP pursuant to contracts with the United States ("NWIRP Production Contracts"). In the performance of these contracts, Raytheon was required to conform with the laws and regulations of the United States and the contract specifications as approved by the United States.

28. The alleged actions and/or omissions of Raytheon which are the subject of plaintiff's complaint were committed by Raytheon, if at all, in its capacity as a contractor with the United States, and pursuant to and during the performance of contracts with the United States.

29. If Raytheon is adjudged to be liable to Bedford or Massport for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford or Massport in connection with the alleged contamination of the Hartwell Aquifer or Massport Property, which liability Raytheon denies, then the United States is jointly and severally liable and Raytheon is entitled to contribution from the United States for those costs.

### COUNT VI
#### (Contractual Indemnification)

30. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 29 of this cross-claim.

31. The Systems Laboratory Production Contracts, the NWIRP Facilities Contracts and the NWIRP Production Contracts contain express and/or implied-in-law contract provisions requiring the United States to indemnify Raytheon for liabilities to third persons not compensated by insurance arising out of Raytheon's performance of its contracts with the United States whether or not caused by the negligence of Raytheon or Raytheon's agents, servants, or employees.

32. If Raytheon is adjudged to be liable to Bedford or Massport for all or a portion of the alleged costs of response actions incurred and to be incurred by Bedford or Massport in connection with the alleged contamination of the Hartwell Aquifer or the Massport Property, which liability Raytheon denies, and such liability is not compensable by insurance required under the government contracts at issue, then Raytheon is entitled to indemnification from the United States for those costs pursuant to the indemnification provisions of Raytheon's Systems Laboratory Production Contracts, the NWIRP Production Contracts and the NWRIP Facilities Contracts.

## COUNT VII
### (Restitution)

33. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 32 of this cross-claim.

34. If Raytheon is adjudged to be liable to Bedford or Massport for all or a portion of the alleged costs of response actions incurred and to be incurred by the United States in connection with the alleged contamination of the Hartwell Aquifer or the Massport Property, which liability Raytheon denies, then the United States will be unjustly enriched by the amount of any damages, costs or other relief assessed against Raytheon in excess of Raytheon's equitable, proportionate share.

35. Such unjust enrichment can be avoided only by requiring the United States to reimburse Raytheon for the

amount of any alleged damages, costs or other relief assessed against Raytheon in excess of Raytheon's equitable, proportionate share.

## COUNT VII
### (Declaratory Judgment)

36. Raytheon repeats and incorporates as if fully set forth herein, the allegations contained in paragraphs 1 through 35 of this cross-claim.

37. An actual controversy has arisen pursuant to 28 U.S.C. § 2201 as to whether the United States is liable to Raytheon in whole or in part for the amount of any judgment or other relief entered against Raytheon and for the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property.

WHEREFORE, Raytheon demands judgment against the United States as follows:

1. The Court enter judgment against the United States in an amount equal to all past and future costs of investigation, monitoring, assessment, evaluation, containment, removal and response incurred and/or to be incurred by Raytheon in connection with the alleged contamination of the Hartwell Aquifer, the Massport Property and the United States Property;

2. The Court enter judgment against the United States in an amount equal to any judgment or other relief entered against Raytheon that is in excess of Raytheon's equitable, proportionate share;

3. The Court declare the rights and obligations of Raytheon and the United States and find that the United States is strictly liable to Raytheon for any judgment or other relief entered against Raytheon and for the alleged contamination of the United States Property;

4. The Court award Raytheon its costs, attorneys' fees and interest; and

5. The Court award such other relief as this Court deems proper and just.

RAYTHEON COMPANY
By its attorneys,

William A. Zucker, BBO# 541240
Jo Ann Shotwell, BBO# 459800
Daniel J. Kelly, BBO# 546738
GADSBY & HANNAH
125 Summer Street
Boston, MA 02110
(617) 345-7000

Dated: July 16, 1991

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Dated: 7-16-91

# EXHIBIT A-8

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me, the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *alfie m paul* | |
| NAME<br>Alfie M. Paul | DATE<br>NOV 0 9 2017 |
| TITLE<br>Director of Archival Operations | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives at Boston<br>380 Trapelo Road<br>Waltham, MA 02452 | |

NA FORM 14007 (10-86)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Oct 7  3 55 PM '91

| | |
|---|---|
| TOWN OF BEDFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action |
| | ) No. 89-2313-WD |
| RAYTHEON COMPANY, | ) |
| MASSACHUSETTS PORT AUTHORITY, | ) |
| U.S. DEPARTMENT OF THE AIR FORCE | ) |
| and | ) |
| U.S. DEPARTMENT OF THE NAVY, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| RAYTHEON COMPANY, | ) |
| | ) |
| Defendant/Third Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEW ENGLAND NURSERIES & GARDEN | ) |
| CENTERS, INC., ET AL., | ) |
| | ) |
| Third-party Defendants. | ) |

ANSWER OF U.S. DEPARTMENT OF THE AIR FORCE
AND U.S. DEPARTMENT OF THE NAVY
TO CROSS-CLAIM OF RAYTHEON COMPANY

The United States Department of the Air Force ("Air Force")
and United States Department of the Navy ("Navy"), collectively
referred to herein as the federal defendants, hereby answer the
cross-claim of Raytheon Company ("Raytheon") against the Air
Force and the Navy as follows:

1.   The first sentence of paragraph 1 consists of Raytheon's
characterization of its cross-claim, to requires no response.
The second and third sentences are conclusions of law which
require no response.

2.   The allegations contained in paragraph 2 refer to or
paraphrase the complaint filed by Bedford in this action, a

written document which speaks for itself and which the federal defendants have answered. Accordingly, no further response is required.

3. The allegations contained in paragraph 3 refer to or paraphrase the complaint filed by Bedford in this action, a written document which speaks for itself and which the federal defendants have answered. Accordingly, no further response is required.

4. The allegations contained in paragraph 4 refer to or paraphrase the complaint filed by Bedford in this action, a written document which speaks for itself and which the federal defendants have answered. Accordingly, no further response is required.

5. The allegations contained in the first sentence of paragraph 5 refer to or paraphrase the complaint filed by Bedford in this action, a written document which speaks for itself and which the federal defendants have answered. Accordingly, no further response is required. The federal defendants admit that this Court, in a Memorandum dated January 15, 1991, allowed defendants' motions to dismiss Count II of plaintiff's complaint.

6. Upon information and belief, the federal defendants admit paragraph 6.

7. The allegations contained in paragraph 7 refer to or paraphrase the cross-claim of defendant Massachusetts Port Authority ("Massport") against the Air Force, the Navy, and Raytheon, a written document which speaks for itself, and to

which no further response is required.

8. The allegations contained in paragraph 8 refer to or paraphrase the answer of the federal defendants to the plaintiff's complaint and the cross-claim of the federal defendants against Raytheon in this action, written documents which speak for themselves, and to which no further response is required.

9. Upon information and belief, the Air Force admits that the United States owned and operated a portion of what is now known as Hanscom Field from approximately 1942 to August 6, 1946, and that it subsequently operated (but did not own) the said Hanscom Field pursuant to one or more lease agreements with the Commonwealth of Massachusetts and its agencies, including Massport, from approximately February 25, 1952 to August 31, 1974. The Air Force and Navy further admit that the United States has owned certain land and facilities at what is now known as the Naval Weapons Industrial Reserve Plant ("NWIRP") from approximately February 25, 1952, to the present. The federal defendants deny, however, that the United States or any agency thereof has operated the said NWIRP, and further state that Raytheon at all times pertinent to this action has operated the facilities at the NWIRP.

10. The federal defendants deny the allegations contained in paragraph 10.

(COUNT I)

11. The federal defendants incorporate by reference their

3

answers set forth in paragraphs 1 through 10 as if fully set forth herein.

12. The federal defendants lack information or knowledge sufficient to admit or deny the allegations contained in paragraph 12.

13. The allegations of paragraph 13 are denied.

14. The allegations contained in paragraph 14 are declarative of the relief sought by Raytheon and therefore no response is required. To the extent a response is required, the allegations are denied.

(COUNT II)

15. The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 14 as if fully set forth herein.

16. The Air Force admits that it operated the Hanscom Air Field at the time hazardous substances were disposed there, and the Navy admits that the United States owns land and facilities at the NWIRP. The other allegations contained in paragraph 16 are denied.

17. The allegations contained in paragraph 17 are declarative of the relief sought by Raytheon and therefore no response is required. To the extent a response is required, the allegations are denied.

(COUNT III)

18. The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 17 as if fully set

forth herein.

19.   The federal defendants lack information or knowledge sufficient to admit or deny the allegations contained in paragraph 19.

20.   The allegations contained in paragraph 20 are declarative of the relief sought by Raytheon and therefore no response is required.   To the extent a response is required, the allegations are denied.

(COUNT IV)

21.   The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 20 as if fully set forth herein.

22.   Paragraph 22 consists of a conclusion of law to which no response is required.   To the extent a response is required the allegation is denied.

23.   The allegations contained in paragraph 23 are declarative of the relief sought by Raytheon and therefore no response is required.   To the extent a response is required, the allegations are denied.

(COUNT V)

24.   The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 23 as if fully set forth herein.

25.   The federal defendants admit the allegations of the first sentence of paragraph 25.   The federal defendants admit the allegations of the second sentence, except that, upon information

5

and belief, Raytheon also engaged in activities pursuant to contracts with other entities. The third sentence refers to contract terms, laws, and regulations which speak for themselves and which therefore require no response.

26. The federal defendants admit the allegations of the first sentence of paragraph 26. The second sentence refers to contract terms, laws, and regulations which speak for themselves and which therefore require no response.

27. The federal defendants admit the allegations of the first sentence of paragraph 27. The second sentence refers to contract terms, laws, and regulations which speak for themselves and which therefore require no response.

28. The federal defendants admit that the alleged actions and/or omissions of Raytheon which are the subject of plaintiff's complaint were committed by Raytheon in its capacity as a contractor under Facilities Use contracts with the Navy. The federal defendants lack information or knowledge sufficient to admit or deny the remaining allegations of paragraph 28.

29. The allegations contained in paragraph 29 are declarative of the relief sought by Raytheon and therefore no response is required. To the extent a response is required, the allegations are denied.

(COUNT VI)

30. The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 29 as if fully set forth herein.

6

31. The allegations of paragraph 31 refer to and characterize written contracts between Raytheon and the Navy which speak for themselves, and therefore no response is required.

32. The allegations contained in paragraph 32 are declarative of the relief sought by Raytheon and therefore no response is required. To the extent a response is required, the allegations are denied.

(COUNT VII)

33. The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 32 as if fully set forth herein.

34. The allegations contained in paragraph 34 are denied.

35. The allegations contained in paragraph 35 are declarative of the relief sought by Raytheon and therefore no response is required. To the extent a response is required, the allegations are denied.

(COUNT VIII)
(Erroneously denoted in Raytheon's cross-claim as Count VII)

36. The federal defendants incorporate by reference their answers set forth in paragraphs 1 through 35 as if fully set forth herein.

37. The allegations contained in paragraph 37 are admitted.

GENERAL DENIAL

All allegations not specifically admitted herein are denied.

FIRST DEFENSE

Raytheon's cross-claim fails to state a claim upon which

7

relief can be granted.

## SECOND DEFENSE

Raytheon's claim for recovery of response costs under 42 U.S.C. §§ 9607(a) and 9620(a) is barred in whole or in part because Raytheon's response actions, if any, were not and are not necessary costs of response consistent with the National Contingency Plan.

## THIRD DEFENSE

Raytheon's claim for recovery of costs for assessment, containment or removal action under M.G.L. c. 21E, § 4, is barred by the doctrine of sovereign immunity.

## FOURTH DEFENSE

Raytheon's claim for recovery of costs for assessment, containment or removal action under M.G.L. c. 21E, § 4, is barred in whole or in part because any such assessment, containment or removal actions were not and are not reasonable costs of assessment, containment or removal consistent with the Massachusetts Contingency Plan.

## FIFTH DEFENSE

Raytheon's claim for contribution and indemnification under common law and M.G.L. c. 231B is barred by the doctrine of sovereign immunity.

## SIXTH DEFENSE

This Court lacks jurisdiction of Raytheon's claim for contractual indemnification to the extent Raytheon relies on contracts entered into on or after March 1, 1979.

## SEVENTH DEFENSE

Raytheon's claim for restitution is barred by the doctrine of sovereign immunity.

## EIGHTH DEFENSE

Raytheon's cross-claim is barred by the terms of the applicable Facilities Use contracts between Raytheon and the Navy.

## NINTH DEFENSE

Raytheon's claim is barred in whole or in part by Raytheon's own strict, joint and several liability under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607, and M.G.L. c. 21E, §§ 4, 5.

## TENTH DEFENSE

In the event the Air Force or the Navy is held responsible for any of the damages, costs, or other relief as alleged in Raytheon's cross-claim, then the Air Force's and/or the Navy's liability should be proportionate to its contribution to the alleged damages and costs.

Dated: October 7, 1991

WAYNE A. BUDD
United States Attorney

By: George B. Henderson, II
Assistant U.S. Attorney
1107 J.W. McCormack POCH
Boston, MA 02109
(617) 223-9407

OF COUNSEL:

Michael Cianci
Dept. of the Air Force
Headquarters, United States
  Air Force
USAF/JACE
Washington, DC  20332-6128

Department of the Navy
Office of the General Counsel
  (Litigation)
ATTN: Nancy Dougherty-Glazier
Crystal Plaza No. 6, Room 1008
2221 Jefferson Davis Highway
Arlington, VA  22202

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on October 7, 1991.

                                        George B. Henderson, II
                                        Assistant U.S. Attorney