United States District Court

District of Massachusetts

```
_____ )
                               )
United States of America,      )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )     Civil Action No.
Raytheon Company,              )     17-11816-NMG
                               )
          Defendant.           )
                               )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This dispute arises from the government's claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover costs incurred by the United States Navy ("the Navy") in response to the release of chlorinated solvents from the Naval Weapons Industrial Reserve Plant ("NWIRP" or "the facility") in Bedford, Massachusetts.

In or about 1989, while Raytheon Company ("Raytheon" or "defendant") operated NWIRP as the Navy's contractor, the Navy identified chlorinated solvents in the groundwater under the

-1-

facility.  Several years later, in or about 1995, the Navy began to build a pump-and-treat system to stop the chlorinated solvent plume from migrating beyond the facility.  That pump-and-treat system became operational in or about 1997.  In 2010, the Navy issued a record of decision ("ROD") for NWIRP, which selected a final remedial action to address the solvent plume.  The Navy now alleges under 42 U.S.C. § 9607(a)(2) that defendant is liable for unreimbursed response costs incurred and to be incurred by the Navy, including enforcement costs, stemming from the contamination at NWIRP that began around 1989.  The Navy also seeks declaratory judgment under 42 U.S.C. §§ 9613(g)(2) and 9607(a), respectively.  Pending before the Court is the defendant's motion to dismiss the complaint.

## I.   Background

In or about 1989, while Raytheon operated NWIRP as the Navy's contractor, the Navy identified chlorinated solvents in the groundwater under its facility.  Following an identified leak of such solvents, the Town of Bedford ("the Town") filed suit against the Navy, Raytheon and others, alleging that the NWIRP facility contaminated the Town's water wells (herein referred to as the "Bedford Litigation").  In March, 1993, another session of this Court entered a judgment dismissing with

prejudice the Bedford Litigation, including the Navy's cross claims against then co-defendant Raytheon.  That dismissal was based upon six separate settlement agreements, including one overarching settlement agreement ("the Global Agreement").  The Court also retained jurisdiction with respect to the provisions of 1) the Agreement Between the Town of Bedford and the Department of the Navy Regarding Site Y ("Site Y Agreement"), 2) the Settlement Agreement Between the Department of the Navy and the Department of the Air Force and Raytheon ("Navy-Raytheon Agreement") and 3) Massport's cross claims against the Air Force.

In 1999, after the pump-and-treat system built by the Navy was operable, the Navy negotiated a separate agreement, the Federal Facility Agreement ("the FFA"), with the United States Environmental Protection Agency ("the EPA").  Ten years later, in 2010, the Navy issued a record of decision ("ROD") for NWIRP which established a remedial action to address the solvent plume.

**II.  Analysis**

**A. Standard of Review**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim

to relief that is plausible on its face". <u>Bell Atl. Corp.</u> v.
<u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts
alleged in the pleadings, documents attached as exhibits or
incorporated by reference in the complaint and matters of which
judicial notice can be taken. <u>Nollet</u> v. <u>Justices of Trial Court
of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), <u>aff'd</u>, 248
F.3d 1127 (1st Cir. 2000).  In "narrow exceptions" courts may
take into consideration documents whose authenticity is not
disputed by the parties, official public records, documents
central to the plaintiff's claim or documents sufficiently
referred to in the complaint. <u>Watterson</u> v. <u>Page</u>, 987 F.2d 1, 3
(1st Cir. 1993).

Furthermore, the Court must accept all factual allegations
in the complaint as true and draw all reasonable inferences in
the plaintiff's favor. <u>Langadinos</u> v. <u>Am. Airlines, Inc.</u>, 199
F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are
sufficient to state a cause of action, a motion to dismiss the
complaint must be denied. <u>See</u> <u>Nollet</u>, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not
applicable to legal conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662

-4-

(2009).  Threadbare recitals of the legal elements which are
supported by mere conclusory statements do not suffice to state
a cause of action. Id.  Accordingly, a complaint does not state
a claim for relief where the well-pled facts fail to warrant an
inference of any more than the mere possibility of misconduct.
Id. at 1950.

**B. Res judicata**

In appropriate cases an "affirmative defense may be
adjudicated on a motion to dismiss for failure to state a
claim". In re Colonial Mortg. Bankers Corp. et. al v. Lopez-
Stubbe et. al, 324 F.3d 12, 16 (1st Cir. 2003).  "The
affirmative defense of res judicata is no exception". Id.
Dismissal under res judicata, however, can only occur where the
facts that establish the defense are conclusive and definitively
ascertainable from 1) the allegations of the complaint, 2) the
documents (if any) incorporated therein, 3) matters of public
record and 4) other matters of which the court may take judicial
notice. Id. at 16.

Furthermore, to establish the affirmative defense of res
judicata, defendants must show that 1) "there is a final
judgment on the merits in an earlier action", 2) "sufficient
identity" exists between the parties in the earlier and later

-5-

suits and 3) "sufficient identity" exists between the causes of actions in the two suits. <u>United States</u> v. <u>Cunan</u>, 156 F.3d 110, 114 (1st Cir. 1998).

The parties do not dispute the authenticity of the public documents in question, namely the order of dismissal of all claims issued by another session of this Court in the Bedford Litigation, the corresponding settlement agreements and the Navy's agency records on the alleged removal and remedial actions at the facility.  Because those documents are of public record and their authenticity is not in dispute, this Court takes judicial notice thereof and will consider them in light of defendant's motion to dismiss.

### 1. Final judgment on the merits

For the purposes of res judicata, a voluntary dismissal with prejudice is a final judgment on the merits. <u>Cunan</u>, 156 F.3d at 114.  Res judicata also applies even if the dismissal is made in conjunction with a settlement. <u>Langton</u> v. <u>Hogan</u>, 71 F.3d 930, 935 (1st Cir. 1995).  In the Bedford Litigation, the Navy filed cross claims against Raytheon, seeking indemnification for costs, liability and recovery, relating to the NWIRP facility, among other claims.  The parties, the Navy, the Air Force and

Raytheon, stipulated that all cross claims asserted in that action would be dismissed with prejudice and without costs.

The Navy now alleges it preserved its claims against Raytheon because the Bedford Litigation did not include the Navy's CERCLA § 9607 claims for three reasons: 1) the Global Agreement in the Bedford Litigation reserves this Court's jurisdiction under the Site Y Agreement and the Navy-Raytheon Agreement (hereafter collectively referred to as the "Separate Agreements"); 2) the Global Agreement only relates to claims that arose in or before 1993 and 3) the Separate Agreements cite CERCLA § 9604, thus expressly reserving the Navy's § 9607 claims.

This Court recognizes that the Global Agreement reserves to this Court jurisdiction with respect to the Separate Agreements. Those agreements, however, have no bearing on this litigation. As defendant explains, Raytheon is not a party to the Site Y Agreement, this Court's continuing jurisdiction is limited to disputes with respect to the remedy selected by the Navy for Site Y and the Navy-Raytheon Agreement called for the dismissal of all claims with prejudice.

Furthermore, the Global Agreement does not limit the scope of the Bedford Litigation to claims discovered in or before 1993

because it is clear from the public documents that the Navy was aware of the contamination at issue, and the potential ongoing response costs, at the time of the prior suit.

Finally, nothing in the Separate Agreements reserves the Navy's § 9607 claims.  Those agreements provide that:

> [N]othing in this agreement shall be construed or applied to limit the Navy's authority to proceed with response action pursuant to section 104 of CERCLA.

The Navy cannot justifiably claim that the general reference to § 9604 preserves its § 9607 claims.  Even if it did, § 9604 utilizes broad language to reference the executive's authority to bring civil settlement actions under § 9622, but because the proscription of a limitation on a broad claim does not amount to an express reservation of a specific claim, the Navy has not expressly preserved its § 9607 claims. See Epic Metals Corp. v. H.H. Robertson Co., 870 F.2d 1574, 1576-77 (Fed. Cir. 1989).

Thus, in accordance with the Cunan opinion, this Court finds that a final judgment on the merits was entered in the Bedford Litigation.

### 2. Sufficiently Identical Parties

To assert res judicata, "sufficient identity" must exist between the parties in the earlier and later suits. Cunan, 156 F.3d at 114.  Raytheon and the Navy were parties to the Bedford

Litigation and neither party disputes that fact.  Therefore,
this element is satisfied.

### 3. Sufficiently Identical Claims

To determine whether the original and later claims have
"sufficient identity", this Court applies the "transactional
approach", which extinguishes subsequent claims with respect to
all or any part of the "transaction, or series of connected
transactions, out of which the action arose". <u>Cunan</u>, 156 F.3d at
114.

The Navy contends that the allegations in its 2017
complaint differ from the claims made in the Bedford Litigation.
Knowledge of potential CERCLA claims, however, is sufficient to
make a claim ripe for res judicata purposes. <u>See</u> <u>Johnson</u> v. <u>SCA</u>
<u>Disposal Services of New England, Inc.</u>, 931 F.2d 970, 976–77
(1st Cir. 1991).  The Town in its 1989 complaint sought damages
under CERCLA, injunctive relief under the Resource Conservation
and Recovery Act and a declaratory judgment against the Navy and
Raytheon, among other parties.  It also claimed future damages
and remediation of contamination allegedly migrating from NWIRP.
Because the Navy had knowledge of potential CERCLA claims being
adjudicated in the Bedford Litigation and initiated response
actions in 1989 at the facility, it could have brought suit

against Raytheon at that time.  This pending suit invokes similar if not precisely the same CERCLA claims with respect to the same facility and the same contamination and thus defendant has shown that the claims are "sufficiently identical".

Because defendant has shown conclusively that the three elements of res judicata have been satisfied, its motion to dismiss will be allowed.

### C. Additional Claims

Even though the Court's finding with respect to res judicata renders defendant's alternative argument moot, the Court proceeds to consider it in the interest of completeness.

### 1. Federal Facilities Agreement ("the FFA")

The defendant asserts that the Navy does not have a viable claim because CERCLA-related settlements bar § 9607 recovery costs and limits the Navy to an untimely contribution claim under § 9613 if that claim is commenced within three years of the purported settlement.  The defendant's argument hinges on the finding that the FFA resolves the Navy's liability at the facility.

This Court is cognizant of the fact that the FFA cites § 9622 (which relates to settlements), that the Navy was also subject to stipulated EPA penalties with respect to any

-10-

remediation action at the subject facility and that the EPA
threatened to issue an order against the Navy pursuant to § 9606
if it failed to negotiate with the EPA in a timely manner.
Section 9620 (e)(2) of CERCLA, however, requires an agency whose
facility is on the National Priorities List to enter into an
inter-agency agreement with the EPA for the "expeditious
completion" of all "necessary remedial action" at a contaminated
government facility. § 9620 (e)(2).  The citation in the FFA to
§ 9620 (e)(2) and the conspicuous absence of an admission of
liability in that agreement, insinuates an inference that the
Navy entered into the FFA with the EPA as part of an inter-
agency agreement, not to resolve a liability.  Accordingly, the
Navy has stated facts sufficient to infer that its § 9607 claims
are not barred by the FFA.  Defendant's motion to dismiss the
government's claim on that ground will be denied.

### 2. Statute of Limitations for § 9607 Claims

Section 9613 of CERCLA provides for differing statutes of
limitations for § 9607 claims depending upon whether the
recovery relates to "removal" or "remedial" actions.  Lawsuits
related to removal actions must be commenced within three years
after completion of the removal action. § 9613(g)(2)(A).
Lawsuits related to remedial actions, on the other hand, need

not be commenced until six years after initiation of physical on-site construction of the remedial action, unless remedial actions have been initiated within three years after the completion of the removal action. § 9613(g)(2)(B).

The Navy alleges that the ROD denotes the end of the removal period and beginning of the remedial period.  Because the Navy claims that the removal period ended concurrently with the start of the remedial period, the Navy asserts that it is entitled to the six-year statute of limitations under § 9613(g)(2)(B), which allows for recovery of both removal and remedial costs if the remedial actions are initiated within three years of the end of the removal period.

Raytheon responds that the Navy's pump-and-treat system, which was begun in 1995 and became operational in 1997, was remedial in nature because it treated 97 million gallons of contaminated groundwater and has been in continuous operation for the past 20 years.  Accordingly, Raytheon asserts that the Navy was required, pursuant to § 9613(g)(2)(B), to bring its remedial action costs claim within six years of the initiation of the construction of the pump-and-treat system, i.e. in or before 2001.

The First Circuit Court of Appeals has not addressed the
question of whether the ROD represents the end of the removal
period but two other circuits have yielded conflicting opinions.
The Ninth Circuit has adopted a holistic approach, holding that
remedial action starts when the final remedial plan is adopted.
California ex rel. Cal. Dep't of Toxic Substances Control v.
Neville Chem. Co., 358 F.3d 661, 666 (9th Cir. 2004).  The
Second Circuit, in contrast, has rejected that approach, holding
that such approach affords the government "unlimited discretion"
as to when the limitations period begins to run.  Schaefer v.
Town of Victor, 457 F.3d 188, 209 (2d Cir. 2006).  This Court is
persuaded by the latter approach and therefore adopts the
reasoning in the Schaefer opinion.  It finds that the issuance
of the Navy's ROD does not definitively determine when removal
action ends and remedial action begins.

This Court recognizes, that while another session of this
Court has concluded that an ROD is relevant in determining
whether an action is "removal" or "remedial" in nature, other
factors, such as the conclusion of final monitoring or the
evaluation or some other determination that no further action is
necessary, are also relevant to determining when a removal
period has ended.  United States v. Boston & Maine Corp., No. CV

-13-

13-10087-IT, 2016 WL 5339573, at *15 (D. Mass 2016).  Consistent
with that opinion, this Court concludes that the finality and
arbitrary nature of the Navy's ROD unfairly imputes to the
government control of the statute of limitations.

The only question left for resolution is therefore whether
the Navy's response action was "removal" or "remedial" in
nature.  That question, pursuant to § 9607, is one of law. <u>New
York</u> v. <u>Next Millenium Realty, LLC</u>, 732 F.3d 117, 126 (2d Cir.
2013).  In the <u>Boston & Maine Corp.</u> case cited above, Judge
Talwani found that the primary thrust of removal actions is to
remove hazardous substances that "pose a threat to public health
and safety" while remedial actions focus primarily on the more
permanent remedy of preventing the migration of released
contaminants where there is no immediate threat to public
health. <u>United States</u> v. <u>Boston & Maine Corp</u>., No. CV 13-10087-
IT, 2016 WL 5339573, at *11 (D. Mass 2016).  This Court agrees.

Raytheon has alleged sufficient facts for this Court to
infer that the pump-and-treat system at NWIRP is remedial in
nature.  For example, it asserts that 1) the Bedford water wells
have been closed since 1984; 2) the plume was slow-moving
because of the low permeability of the glacial till layers in
the subject area; 3) the Navy's Short Term Measure Design Plan

-14-

of Action/Work Plan noted that the objective of the pump-and-treat system was to contain the migration of contaminated groundwater and 4) the Final Five-Year Review for NWIRP noted that the pump-and-treat system was and continues to be effective in capturing and containing the solvent plume.

Accordingly, while this Court recognizes that there was some overlap between the alleged removal and remedial acts in question, there is sufficient evidence to suggest that the pump-and-treat system served primarily as a long-term, remedial action.  Thus, the six-year statute of limitations on the remedial action applies from the time the pump-and-treat system was begun and the Navy's § 9607 claims are time barred as a matter of law.  Defendant's motion to dismiss on statute of limitations grounds will be allowed.

**ORDER**

On res judicata and statute of limitation grounds (but not
on the government's § 9607 claim under the Federal Facilities
Agreement), the motion of defendant Raytheon to dismiss (Docket
No. 10) is **ALLOWED**.

**So ordered.**

                                        /s/ Nathaniel M. Gorton____
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated September 25, 2018